25 Civ. 3815 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLIVER CASEY ESPARZA, et. al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et. al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
  *Attorney for Defendants City of New York,*
  *Jessica Tisch, Edward Caban, Thomas Donlon*
  *Keechant Sewell, Kenney Vega, Jonathan*
  *Pessoa, Thomas Keller, Giovanni Martino and*
  *Shaye Hall*
  *100 Church Street*
  *New York, N.Y.  10007*

  *Of Counsel: Mark D. Zuckerman*
  *Tel:  (212) 356-3519*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL STATEMENT .................................................................................... 1

          A.  Oliver Casey Esparza and Phillip Nasrallah ........................................ 1

          B.  William Thomas Bloxham ...................................................................... 2

          C.  Ankit Gupta ............................................................................................ 2

          D.  Jay Harper .............................................................................................. 3

          E.  Richard Lee ............................................................................................ 3

          F.  Katherine Pender .................................................................................... 4

LEGAL STANDARD ON A RULE 12(b)(6) MOTION ................................... 4

ARGUMENT

       POINT I

              PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS KELLER AND PESSOA SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(5) ................................................................. 5

       POINT II

              ALL OF PLAINTIFFS' CLAIMS BASED ON FALSE ARREST OR UNLAWFUL SEIZURE FAIL ......................................................................................... 6

          A.  Seizure or Confinement ......................................................................... 6

          B.  Ongoing State Criminal Proceedings ..................................................... 9

          C.  Younger Abstention Doctrine ................................................................. 9

**Page**

POINT III

    PLAINTIFFS' CLAIMS AGAINST TISCH, DONLON, CABAN AND SEWELL FAIL FOR LACK OF THEIR PERSONAL INVOLVEMENT ................................ 10

POINT IV

    PLAINTIFFS' CLAIMS FOR MUNICIPAL LIABILITY FAIL ..................................................................... 11

    A.  Unofficial Custom or Practice ............................................ 12

    B.  Municipal Failure to Train or Supervise............................. 14

POINT V

    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF................................................................. 17

    A.  Legal Standard Upon Motion to Dismiss Pursuant to Rule 12(b)(1), Fed. R. Civ. P......................... 17

    B.  Legal Standard For Standing to Seek Injunctive Relief............................................................................. 18

    C.  Plaintiffs Cannot Demonstrate a Likelihood of Future Harm ....................................................................... 20

    D.  Plaintiffs Have Not Plausibly Alleged "a Formal Policy or Its Equivalent" Necessary to Confer Standing ............................................................................. 20

    E.  Even Applying the Monell Standard, Plaintiffs Fail to Plausibly Allege a "Formal Policy or its Equivalent" ........................................................................ 21

    F.  Plaintiffs' Class Allegations Seeking Injunctive Relief Should Be Dismissed ............................................ 21

POINT VI

    THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS ................................. 21

**Page**

POINT VII

      PLAINTIFFS' STATE LAW MALICIOUS PROSECUTION CLAIMS FAIL ............................................................ 23

POINT VIII

      PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN ......................................................................... 23

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Almareh v. Mayorkas,
   20 Civ. 11024 (VEC),
   2021 U.S. Dist. LEXIS 203546 (S.D.N.Y. Oct. 20, 2021) ....................................................18

Amnesty Am. v. Town of W. Hartford,
   361 F.3d 113 (2d Cir. 2004)...................................................................................................13

Amore v Novarro,
   624 F.3d 522 (2d Cir. 2010)....................................................................................................6

An v. City of New York,
   16 Civ. 5381 (LGS),
   2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1, 2017).......................................16, 18, 20, 21

An v. City of New York,
   230 F. Supp.3d 224 (S.D.N.Y. 2017)......................................................................................13

Aquino v. City of New York,
   16 Civ. 1577 (GHW),
   2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017).........................................................11

Ashcroft v. Iqbal,
   556 U.S. 662 (2008).................................................................................4, 5, 7, 10, 14, 16

Beck v. City of New York,
   12 Civ. 9231 (RA),
   2014 U.S. Dist. LEXIS 1136 (S.D.N.Y. Jan. 3, 2014).............................................................7

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007).............................................................................................................4, 5

Borgese v. Baby Brezza Enters. LLC,
   20 Civ. 1180 (VM),
   2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021)..................................................23, 24

Boyd v. City of New York,
   336 F.3d 72 (2d Cir. 2003)......................................................................................................8

Buari v. City of New York,
   530 F. Supp.3d 356 (S.D.N.Y. 2021).....................................................................................12

Burg v. Gosselin,
   591 F.3d 95 (2d Cir. 2010)...................................................................................................6, 8

**Cases**                                                                                                                          **Pages**

Calderon v. City of New York,
    138 F. Supp.3d 593 (S.D.N.Y. 2015)......................................................................13

Camacho v. City of New York, et. al.,
    19 Civ. 11096 (DLC),
    2020 U.S. Dist. LEXIS 125801 (S.D.N.Y. July 16, 2020) ........................................23

Carter v. HealthPort Techs., LLC,
    822 F.3d 47 (2d Cir. 2016)...............................................................................17

Chavez v. Finney,
    19 Civ. 4109 (RA),
    2022 U.S. Dist. LEXIS 52843 (S.D.N.Y. Mar. 23, 2022) ....................................6, 7

City of Canton v. Harris,
    489 U.S. 378 (1989)..................................................................................11, 12

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)....................................................................................19, 20

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1985).........................................................................................12

Connick v. Thompson,
    563 U.S. 51 (2011).....................................................................................15, 17

Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.,
    790 F.3d 411 (2d Cir. 2015)..............................................................................18

Demaitre v. City of New York,
    18 Civ. 12403 (PGG),
    2020 U.S. Dist. LEXIS 189206 (S.D.N.Y. Oct. 11, 2020) ....................................16

Denny v. Deutsche Bank AG,
    443 F.3d 253 (2d Cir. 2006)...................................................................17, 21, 24

Farid v. Ellen,
    593 F.3d 233 (2d Cir. 2010)..............................................................................10

Friends of the Earth, Inc. v. Laidlaw Envt'l. Serv's. (TOC), Inc.,
    528 U.S. 167 (2000).........................................................................................19

Garcia v. Bloomberg,
    662 Fed. App'x 50 (2d Cir. 2016) (Summary Order)..............................................13

**Cases**                                                                                          **Pages**

Garcia v. City of New York,
    09 Civ. 4686 (CM),
    2010 U.S. Dist. LEXIS 73638 (S.D.N.Y. July 14, 2010) .........................................................1

Garcia v. Execu/Search Grp., LLC,
    17 Civ. 9401 (WHP),
    2019 U.S. Dist. LEXIS 68904 (S.D.N.Y. Feb. 19, 2019).....................................................23

Gaston v. Ruiz,
    17 Civ. 1252 (NGG),
    2018 U.S. Dist. LEXIS 112695 (E.D.N.Y. July 6, 2018) ......................................................12

Gen. Tel. Co. v. Falcon,
    457 U.S. 147 (1982)................................................................................................................24

George v. Prof'l Disposables Int'l, Inc.,
    221 F. Supp.3d 428 (S.D.N.Y. 2016)................................................................................... 5-6

Goodman v. City of New York,
    23 Civ. 9648 (JGLC)(GWG),
    2024 U.S. Dist. LEXIS 131610(S.D.N.Y. July 25, 2024),
    adopted by, 2024 U.S. Dist. LEXIS 155779 (S.D.N.Y. Aug. 29, 2024) ................................23

Greene v. City of New York, et. al.,
    21 Civ. 05762 (LAP),
    2025 U.S. Dist. LEXIS 58927 (S.D.N.Y. Mar. 28, 2025) .....................................................10

Greene v. City of New York, et. al.,
    725 F. Supp. 3d 400 (S.D.N.Y. Mar. 26, 2024)......................................................................13

Hansel v. Town Court,
    56 F.3d 391 (2d Cir. 1995)......................................................................................................9

Harty v. Simon Property Group, L.P.,
    428 Fed. App'x. 69 (2d Cir. 2011) (Summary Order) ............................................................19

Haus v. City of New York,
    03 Civ. 4915 (RWS)(MHD),
    2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. Aug. 31, 2011)...................................................24

Heck v. Humphrey,
    512 U.S. 477 (1994)................................................................................................................9

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)....................................................................................................5

**Cases**                                                                    **Pages**

Isaac v. City of New York,
     16 Civ. 4729 (KAM) (RLM),
     2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018),
     adopted by, Isaac v. City of New York,
     2018 U.S. Dist. LEXIS 163536 (E.D.N.Y. Sept. 24, 2018)....................................................13

Jaegly v. Couch,
     439 F.3d 149 (2d Cir. 2006)..........................................................................................6

John v. Whole Foods Mkt. Grp., Inc.,
     858 F.3d 732 (2d Cir. 2017)........................................................................................17

Klein & Co. Futures, Inc. v. Board of Trade of City of New York,
     464 F.3d 255 (2d Cir. 2006)........................................................................................22

Kolari v. N.Y. Presbyterian Hosp.,
     455 F.3d 118 (2d Cir. 2006)........................................................................................22

MacIssac v. Town of Poughkeepsie,
     770 F. Supp. 2d 587 (S.D.N.Y. 2011)....................................................................20, 21

Marcavage v. The City of New York,
     689 F.3d 98 (2d Cir. 2012)..........................................................................................19

McAllister v. New York City Police Department,
     49 F. Supp. 2d 688 (S.D.N.Y. 1999)..........................................................................14

Means v. City of New York, et. al.,
     15 Civ. 4855 (KBF),
     2016 U.S. Dist. LEXIS 45865 (S.D.N.Y. April 5, 2016) .........................................14

Mercado v. City of N.Y.,
     08 Civ. 2855 (BSJ) (HP),
     2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) .......................................12

Miller v. County of Nassau,
     467 F. Supp.2d 308 (E.D.N.Y. 2006) ........................................................................12

Monell v. Dep't of Social Services,
     436 U.S. 658 (1978)..........................................................11, 12, 13, 14, 20, 21, 24

Morrison v. Nat'l Austl. Bank,
     547 F.3d 167 (2d Cir. 2008)........................................................................................18

O'Shea v. Littleton,
     414 U.S. 488 (1974)..............................................................................................18, 19

**Cases**                                                                          **Pages**

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)..............................................................................................11

Passman v. Peloton Interactive, Inc.,
    19 Civ. 11711 (LGS),
    2025 U.S. Dist. LEXIS 84144 (S.D.N.Y. May 2, 2025)......................................24

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)..............................................................................................11

Posr v. Doherty,
    944 F.2d 91 (2d Cir. 1991).................................................................................6, 7

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)...........................................................................15, 16

Rodriguez v. City of New York,
    16 Civ. 1649 (AMD)(RLM),
    2022 U.S. Dist. LEXIS 104160 (E.D.N.Y. June 7, 2022) ...............................12, 13

Ross v. Bank of Am., N.A. (USA),
    524 F.3d 217 (2d Cir. 2008)..............................................................................18

Seabrook v. Jacobson,
    153 F.3d 70 (2d Cir. 1998)................................................................................21

Shain v. Ellison,
    356 F.3d 211 (2d Cir. 2004)......................................................................18, 19, 20

Shaw v. Hornblower Cruises & Events, LCC,
    21 Civ. 10408 (VM),
    2022 U.S. Dist. LEXIS 202703 (S.D.N.Y. Nov. 7, 2022)...............................23, 24

Simms v. City of New York, et. al.,
    480 Fed App'x 627 (2d Cir. 2012) (Summary Order) ...........................................16

Singleton v. City of New York,
    98 Civ. 0414 (LAP),
    1998 U.S. Dist. LEXIS 11842 (S.D.N.Y. July 31, 1998) .......................................9

Smalls v. Doe #1,
    06 Civ. 302 (ARR),
    2006 U.S. Dist. LEXIS 8426 (E.D.N.Y. Jan. 30, 2006) ........................................9

Talarico v. Port Auth. of N.Y. and N.J.,
    367 F. Supp.3d 161 (S.D.N.Y. 2019).....................................................................24

**Cases**                                                                                        **Pages**

Tangreti v. Bachmann,
    983 F.3d 609 (2d Cir. 2020)........................................................................................10

Tasini v. New York Times Corp., Inc.,
    184 F. Supp. 2d 350 (S.D.N.Y. 2002)........................................................................18

Terry v. Ohio,
    392 U.S. 1 (1968)............................................................................................................6

Tieman v. City of Newburgh,
    13 Civ. 4178 (KMK),
    2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) .......................................13

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012)........................................................................16

United States v. Levy,
    731 F.2d 997 (2d Cir. 1984)..........................................................................................7

United States v. Mendenhall,
    446 U.S. 544 (1980)........................................................................................................6

United States v. Moreno,
    897 F.2d 26 (2d Cir. 1983)............................................................................................7

United States v. Vazquez,
    145 F.3d 74 (2d Cir. 1998)..........................................................................................17

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)..........................................................................................12

W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,
    549 F.3d 100 (2d Cir. 2008)........................................................................................17

Warth v. Seldin,
    422 U.S. 490 (1975)......................................................................................................17

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)..........................................................................................7

Williams v. City of New York,
    34 F. Supp.3d 292 (S.D.N.Y. 2014)..............................................................18, 19, 20

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)..........................................................................14, 15, 17

**Cases**                                                                                      **Pages**

Younger v. Harris,
    401 U.S. 37 (1971).............................................................................................9

**Statutes**

28 U.S.C. § 1367(3)........................................................................................22

28 U.S.C. § 1367(a)........................................................................................21

28 U.S.C. § 1367(c)....................................................................................21, 22

42 U.S.C. § 1983...................................................................6, 10, 11, 15, 23

Fed. R. Civ. P. 4(m)....................................................................................5, 6

Fed. R. Civ. P. 8...............................................................................................5

Fed. R. Civ. P. 8(a)(2).....................................................................................5

Fed. R. Civ. P. 12(b)(1)........................................................................1, 17, 18

Fed. R. Civ. P. 12(b)(5).....................................................................................5

Fed. R. Civ. P. 12(B)(6).....................................................................................4

Fed. R. Civ. P. 12(f).........................................................................................1

Fed. R. Civ. P. 23(a)(2)..................................................................................24

Fed. R. Civ. P. 23(a)(3)..................................................................................24

Fed. R. Civ. P. 23(b)(3)..................................................................................24

N.Y.C. Admin. Code §8-801, et. seq. ..........................................................8, 9

## PRELIMINARY STATEMENT

Defendants City of New York (the "City"), NYPD Police Comm. Jessica S. Tisch, former NYPD Police Comm. Thomas G. Donlon, former NYPD Police Comm. Edward Caban, former NYPD Police Comm. Keechant Sewell, P.O. Kenny Vega, P.O. Jonathan Pessoa, P.O. Thomas Keller, P.O. Giovanni Martino and P.O. Shaye Lall, hereby respectfully submit their Memorandum of Law in Support of their motions to dismiss plaintiffs' amended complaint (the "Complaint") pursuant to Rules 12(b)(1) (all claims for injunctive relief), 12(b)(5) (plaintiffs' claims against Jonathan Pessoa and Thomas Keller only), 12(b)(6) and to strike plaintiffs' class allegations pursuant to Rule 12(f), Fed. R. Civ. For the reasons set forth herein, defendants' motions should be granted in their entirety and the Complaint dismissed with prejudice[1].

## FACTUAL STATEMENT

### A.    Oliver Casey Esparza and Phillip Nasrallah

On October 1, 2024, the plaintiffs Esparza and Nasrallah biked to work separately. (Complaint, ¶51) "After the LPI [leading pedestrian interval] light turned to a white signal, indicating that it was permissible to cross, both…Esparza and…Nasrallah crossed the intersection going westbound on 42nd Street." (Complaint, ¶52) Both Esparza and Nasrallah were "stopped by…[P.O.] Vega, who indicated that he was stopping both of them for going through the red traffic light." (Complaint, ¶53) Esparza and Nasrallah "both understood that their freedom of movement was constrained and that they were not free to leave or to continue biking to work…and were not

---

[1] Plaintiffs have failed to state causes of action against any individual defendant, including the Doe defendants. All of plaintiffs' claims against the John and Jane Doe defendants should therefore be dismissed as well as plaintiff has failed to plausibly allege claims against them. See Garcia v. City of New York, 09 Civ. 4686 (CM), 2010 U.S. Dist. LEXIS 73638, at *2 (S.D.N.Y. July 14, 2010) (dismissing claims against John and Jane Doe defendants upon the City's motion).

free to leave until Defendant Vega finished writing out the tickets/summonses and returned their identification documents to them." (Complaint, ¶¶54, 56) P.O. Vega demanded that Esparza and Nasrallah "produce identification and then wait." (Complaint, ¶55) Esparza and Nasrallah were issued '[t]raffic violation[s]' by P.O. Vega. (Complaint, ¶¶57, 58) Esparza had a single court date of April 15, 2025, at which time the "judge dismissed the violation at that hearing." (Complaint, ¶59) Nasrallah "was given a court date for the violation, but it was adjourned and remains pending." (Complaint,¶ 60)

## B.    William Thomas Bloxham

On November 20, 2024, Bloxham was riding [his bicycle] south on Tompkins Avenue in Brooklyn. (Complaint, ¶¶61, 62) "When he reached the intersection of Tompkins Avenue and Dekalb Avenue,…Bloxham stopped at the red light and waited for the signal to change." (Complaint, ¶63) "He then proceeded through he light during an LPI." (Complaint, ¶63) Bloxham was then "pulled over" by a "police cruiser with flashing lights." (Complaint, ¶64) P.O. Pessoa allowed Bloxham to identify himself through information on his phone because he did not have his identification with him. (Complaint, ¶64) "Bloxham understood during his interaction with…[P.O.] Pessoa, which lasted for approximately 10 to 15 minutes, that he was not free to leave until he was given permission to do so." (Complaint, ¶66) P.O. Pessoa "issued…Bloxham a traffic ticket for allegedly crossing an intersection on a red light,…."  (Complaint, ¶67) Bloxham "has pled not guilty and is presently awaiting his hearing." (Complaint, ¶67)

## C.    Ankit Gupta

"On May 20, 2025, [p]laintiff Ankit Gupta was biking home from Manhattan to his residence in Jackson Heights, Queens…." (Complaint, ¶68) "Gupta crossed the intersection of Grand Avenue and East 69th Street in Woodside, Queens during an LPI." (Complaint, ¶69) Plaintiff was then "pulled over" by P.O. Keller and another officer, who were in a police car. (Complaint,

¶70) P.O. "Keller demanded Gupta's identification and ordered him to wait." (Complaint, ¶70) "…[P.O.] Keller issued…Gupta a traffic ticket alleging a failure to stop at a red light…." (Complaint, ¶72) "Gupta was detained for approximately 15 minutes before…[P.O.] Keller permitted him to leave." (Complaint, ¶73) "Gupta understood that he was not free to leave until…[P.O.] Keller finished writing…the summons and returned his identification to him." (Complaint, ¶73) "Gupta's court date for the ticket is scheduled to occur on June 2, 2026." (Complaint, ¶74)

**D.    Jay Harper**

On April 5, 2024, [p]laintiff Jay Harper rode his bicycle in Harlem. (Complaint, ¶75) "When…Harper arrived at the intersection of Manhattan Avenue and West 122nd Street, the pedestrian light was white, so…Harper…proceeded through the intersection." (Complaint, ¶76) Harper was "pulled" over by P.O. Martino, who was in a police car. (Complaint, ¶77) "…[P.O.] Martino ordered…Harper to produce identification and wait." (Complaint, ¶78) "[P.O.] Martino issued…Harper a traffic ticket for allegedly crossing an intersection on a red light,…." (Complaint, ¶81) "…Harper was detained for approximately 15 minutes before Martino permitted him to leave." (Complaint, ¶82) "…Harper understood that he was not free to leave until…[P.O.] Martino finished writing out the summons and returned his identification to him." (Complaint, ¶82) "…Harper's court date for the ticket is scheduled for March 31, 2026." (Complaint, ¶83)

**E.    Richard Lee**

"Plaintiff Richard Lee commuted to work by bicycle on September 4, 2024." (Complaint, ¶86) "…Lee entered the intersection of Thomas S. Boyland Street and Pitkin Avenue in Brooklyn during an LPI." (Complaint, ¶87) "Defendant John Doe 1 pulled…Lee over in a police car and ordered him to produce identification." (Complaint, ¶88) "Defendant John Doe 1 then issued…Lee a summons for allegedly running a red light." (Complaint, ¶90) "…Lee was detained for

approximately 10 to 15 minutes before [d]efendant John Doe 1 permitted him to leave." (Complaint, ¶91) "…Lee understood that he was not free to leave until [d]efendant John Doe 1 finished writing out the summons and returned his identification to him." (Complaint, ¶91) "A virtual hearing was held on…Lee's summons on December 26, 2024," after which the violation was dismissed. (Complaint, ¶92)

**F.    Katherine Pender**

"Plaintiff Katherine Pender was traveling home by Citi ebike on June 4, 2025." (Complaint, ¶93) "She entered the intersection of Lexington Avenue and East 50th Street in Manhattan during an LPI." (Complaint, ¶94) "Defendant Lall then issued…Pender a summons for allegedly running a red light." (Complaint, ¶99) "Pender was detained for approximately 10 minutes." (Complaint, ¶100) "…Pender understood that she was not free to leave until [d]efendant Lall finished writing out the summons and returned…Pender's identification."  (Complaint, ¶100)

## LEGAL STANDARD ON A RULE 12(b)(6) MOTION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS KELLER AND PESSOA
SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(5)**

Rule 4(m), Fed. R. Civ. P., states as follows: "If a defendant is not served within 90 days after the complaint is filed, the Court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." "'Federal Rule of Civil Procedure Rule 12(b)(5) provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m).'" George v. Prof'l Disposables Int'l, Inc., 221 F. Supp.3d 428, 442 (S.D.N.Y.

2016) (M.J. Moses) (internal citations omitted). Here, it cannot be disputed that the defendants Keller and Pessoa were served outside of the 90 period allowed by Rule 4(m). (See Docket 47, 49) Dismissal of these claims is thus proper.

## POINT II

## ALL OF PLAINTIFFS' CLAIMS BASED ON FALSE ARREST OR UNLAWFUL SEIZURE FAIL

### A.    Seizure or Confinement

Plaintiffs allege federal false arrest based on a single non-felony summons that they each received. "A §1983 false arrest claim 'derives from [the] Fourth Amendment right to be free from unreasonable seizures,....'" Chavez v. Finney, 19 Civ. 4109 (RA), 2022 U.S. Dist. LEXIS 52843, at *20 (S.D.N.Y. Mar. 23, 2022) (quoting Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006)). "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). "[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure." Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010). The Second Circuit has "noted that in Burg that '[a] plaintiff pleads a seizure when he alleges that a police officer held on to his identification and ordered him to stay put while the police officer wrote out a summons.'" Amore v Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (quoting Burg, at 96 n.3).

The Second Circuit has stated, "of course, just as not every encounter between a citizen and the police is a seizure, Terry v. Ohio, 392 U.S. 1, 13 (1968), not every seizure is an arrest." Posr v. Doherty, 944 F.2d 91, 97-98 (2d Cir. 1991). "Thus it is not enough to say a person has been arrested simply because, due to a police action, he reasonably believes he is not free to leave." Id., at 98. "Since [plaintiffs] have [only in their federal claim] alleged an unconstitutional 'false arrest'

instead of a mere 'unreasonable seizure,' [the Court] must determine whether the encounter between [them] and [the defendant police officers] could have amounted to an arrest." Id.

To state a claim for false arrest, a plaintiff must allege that the defendant "intentionally confined [the plaintiff] without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted. Posr, supra, at 98-99 (citing United States v. Levy, 731 F.2d 997, 1000 (2d Cir. 1984) ("an arrest occurred when suspect was ordered to 'freeze' and was forced to stand spread-eagle against a wall) and United States v. Moreno, 897 F.2d 26, 31 (2d Cir. 1983) ("the defendant was arrested 'when [the police officers] pushed [the defendant] against the wall and told him not to move'")); see Chavez v. Finney, supra, at *23-25 (no confinement sufficient for false arrest claim where plaintiff "fail[ed] to state any facts that would support [his] conclusory assertions, such as describing physical restraint or an order from [the police officers] to remain in place."); see also Beck v. City of New York, 12 Civ. 9231 (RA), 2014 U.S. Dist. LEXIS 1136, at *8 (S.D.N.Y. Jan. 3, 2014) ("Plaintiff's allegation that she was confined by Defendants, without more, is simply a legal conclusion.").

Plaintiffs have not plausibly alleged "seizures," and certainly not "confinements" necessary to plausibly allege false arrests. Plaintiffs interchangeably allege that they were "detained," told to "wait" and subjectively did not feel free to leave while the officers spent 10-15 minutes each writing out the subject tickets/summonses. Plaintiffs' allegations that they were "detained" amount to no more than threadbare legal conclusions without any factual support and therefore their claims fail pursuant to Iqbal, supra. Plaintiffs' allegations of each being told to "wait," is improperly conclusory, as they do not even quote what was said by any of the officers

to them nor do plaintiffs provide factual support for such assertions. Moreover, any direction to "wait," without more, is hardly the equivalent of physical restraint or an order to "remain in place." No plaintiff alleges that any force was used by the officers, that there was any physical contact with any defendant police officer, that restraints such as handcuffs were used, that they were placed in a police vehicle or otherwise taken into custody, that they were told to stand in place or that police back up was called. Likewise, no plaintiff even alleges that he/she asked to leave and that such request was denied. Further, plaintiffs' "confinement" allegations in their First Cause of Action are completely conclusory and threadbare. (See Complaint, ¶¶146-47).

Further, no plaintiff even makes an allegation of having to make more than one court appearance at a later date after the issuance of the summonses, and therefore, pursuant to Burg, supra, neither a seizure nor confinement can be found on this basis either. In sum, plaintiffs are attempting to turn the issuance of every non-felony traffic ticket/summons into a false arrest claim, which the Court should easily reject. Plaintiffs' First Cause of Action based on federal false arrest should be dismissed in its entirety with prejudice as to all defendants.

To the extent the Court reaches plaintiffs' state and local law claims based on alleged false arrest (Third Cause of Action), violations of the New York State Constitution (Second Cause of Action) and violations of the New York City Administrative Code §8-801, et. seq., (Fifth Cause of Action), plaintiffs' claims all fail for similar reasons. Plaintiffs cannot show that the result would be any different under state law, since a claim for false arrest is rooted in the Fourth and Fourteenth Amendments, and thus is substantially the same as a New York state law claim for false arrest. See Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). Similarly, since plaintiffs' New York State Constitutional claims are premised on their being allegedly "stopped, detained and arrested," (see Complaint, ¶¶158-163), the aforementioned authorities dictate that the same result

be reached on this claim as well. Finally, since plaintiffs' claims pursuant to New York City Administrative Code §8-801, et. seq. are also based on alleged unlawful "seizures," see Complaint, ¶¶211-216, plaintiffs cannot show that a different result should reached on that claim either. Plaintiffs' Second, Third and Fifth Causes of Action should be dismissed with prejudice as to all defendants.

**B.    Ongoing State Criminal Proceedings**

"Plaintiff[s] cannot pursue a civil rights claim based on false arrest…while criminal charges are still pending against [them] in State Court." Singleton v. City of New York, 98 Civ. 0414 (LAP), 1998 U.S. Dist. LEXIS 11842, at *7 (S.D.N.Y. July 31, 1998) (citing Heck v. Humphrey, 512 U.S. 477 (1994)). "Because plaintiff[s Nasrallah, Bloxham, Gupta, Harper and Pender have] not alleged that the state court proceedings have terminated in [their] favor—indeed, they appear to be ongoing—[their] false arrest claims must be dismissed." Id., at *8.  On this basis as well, these plaintiffs' federal false arrest should claims should be dismissed.

**C.    <u>Younger</u> Abstention Doctrine**

The federal false arrest claims of Nasrallah, Bloxham, Gupta, Harper and Pender should also be dismissed based on the Younger abstention doctrine. The "Younger abstention is appropriate when 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in state court." Hansel v. Town Court, 56 F.3d 391, 393 (2d Cir. 1995). "If,…, the criminal case against plaintiff remains pending, then this court must dismiss the complaint, notwithstanding plaintiff's claim[] of false arrest. Smalls v. Doe #1, 06 Civ. 302 (ARR), 2006 U.S. Dist. LEXIS 8426, at *6 (E.D.N.Y. Jan. 30, 2006) (citing Younger v. Harris, 401 U.S. 37 (1971)). Dismissal of these plaintiffs' false arrest claims is therefore proper pursuant to Younger.

## POINT III

## PLAINTIFFS' CLAIMS AGAINST TISCH, DONLON, CABAN AND SEWELL FAIL FOR LACK OF THEIR PERSONAL INVOLVEMENT

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citations omitted). "'[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676). "[I]n Tangreti, the Court of Appeals rejected 'a special test for supervisory liability.'" Greene v. City of New York, et. al., 21 Civ. 05762 (LAP), 2025 U.S. Dist. LEXIS 58927, at *37 (S.D.N.Y. Mar. 28, 2025) (quoting Tangreti, supra, at 620). "And since Tangreti, whatever the alleged constitutional violation may be, '[t]he violation must be established against the supervisory official directly.'" Id., at *37 (quoting Tangreti, at 618).

Plaintiffs' bring their claims against all defendants, which would seemingly include Tisch, Caban, Donlon and Sewell. The only "factual" allegations against any of these defendants are that as present or former police commissioners, each "was…chiefly and ultimately responsible for formulating, implementing, and supervising NYPD policies," (Complaint, ¶¶27-30), was "aware" of a "consistent and widespread" "custom or usage" (Complaint, ¶152) and was aware of a "failure" to "provide adequate training or supervision to subordinates…." Complaint, ¶153). Each of these allegations is improperly conclusory and threadbare pursuant to Iqbal. Further, as in Greene, supra, "[n]one of these actions,…establish that [these] defendants were personally involved in the alleged constitutional violations" alleged. See Greene, supra, at *40-41 (internal citations omitted). All claims against Tisch, Donlon, Sewell and Caban should therefore be dismissed with prejudice.

POINT IV

**PLAINTIFFS' CLAIMS FOR MUNICIPAL LIABILITY FAIL**

"In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: (1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978). To hold a municipality liable as a "person" within the meaning of §1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell, supra, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989).[2] It is well established that a single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. Oklahoma City v. Tuttle, supra, at 824.

---

[2] The Complaint does not plausibly allege either a formal policy or a decision of a final policymaker that caused the violation of plaintiffs' rights. As such, the first two prongs of the foregoing test for municipal liability are not addressed.

"A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation." Gaston v. Ruiz, 17 Civ. 1252 (NGG), 2018 U.S. Dist. LEXIS 112695, at *15-16 (E.D.N.Y. July 6, 2018) (citing City of Canton, supra, at 385). In fact, "the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of N.Y., 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell, 436 U.S. at 694).

## A.    Unofficial Custom or Practice

For plaintiffs to establish municipal liability by an unofficial custom or practice, they must show that the City "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." Miller v. County of Nassau, 467 F. Supp.2d 308, 314 (E.D.N.Y. 2006) (quoting Monell, supra, at 694). In order to prove such a municipal liability theory, plaintiff must establish that the practice alleged was so manifest as to imply the acquiescence of policy-making officials. City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion).

A plaintiff may plead the existence of *de facto* customs or policies "by citing to complaints in other cases that contain similar allegations." Gaston v. Ruiz, supra, at *17. "Such complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." Rodriguez v. City of New York, 16 Civ. 1649 (AMD)(RLM), 2022 U.S. Dist. LEXIS 104160, at *27 n.9 (E.D.N.Y. June 7, 2022) (quoting Buari v. City of New York, 530 F. Supp.3d 356, 398 (S.D.N.Y. 2021)). "Research reports may be used to bolster Monell claims, but only if those reports are sufficiently connected to the specific

12

facts of the case….” Isaac v. City of New York, 16 Civ. 4729 (KAM) (RLM), 2018 U.S. Dist.

LEXIS 132995, at *51 (E.D.N.Y. Aug. 6, 2018) (M.J. Mann) (internal citations omitted), adopted

by, Isaac v. City of New York, 2018 U.S. Dist. LEXIS 163536 (E.D.N.Y. Sept. 24, 2018).  “[M]ere

negligence is insufficient to establish a Monell claim.” Garcia v. Bloomberg, 662 Fed. App’x 50,

54 (2d Cir. 2016) (Summary Order) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113,

128 (2d Cir. 2004)).

Even a handful of purportedly “similar incident[s]” for which there were no adjudications

would be insufficient to plausibly allege such a pervasive “custom or practice” theory.  See Greene

v. City of New York, et. al., 725 F. Supp. 3d 400, 430-31 (S.D.N.Y. Mar. 26, 2024) (15 purportedly

“similar” incidents in a 25 year period too few to plausibly allege an informal custom or practice);

An v. City of New York, 230 F. Supp.3d 224, 229-30 (S.D.N.Y. 2017) (six lawsuits and one

newspaper article over four year period insufficient to allege municipal liability where there were

no adjudications against defendant); Calderon v. City of New York, 138 F. Supp.3d 593, 612-613

(S.D.N.Y. 2015) (16 lawsuits over 12 year period where there were no adjudications against

defendant did not suggest a pervasive practice); Tieman v. City of Newburgh, 13 Civ. 4178

(KMK), 2015 U.S. Dist. LEXIS 38703, at *50 (S.D.N.Y. Mar. 26, 2015) (13 lawsuits against

defendant over four year period without finding of adjudication against defendant insufficient);

Rodriguez, supra, at *27 n.9 (three purportedly similar cases predating criminal conviction

inadequate to allege municipal custom or practice).

Plaintiff’s “custom or practice” municipal liability claim fails for a number of reasons.

First, as seen, no plaintiff has sufficiently pled an underlying constitutional violation. Second,

although plaintiff must demonstrate an acquiescence of policy making officials to sustain such

claim, plaintiffs’ allegation in this regard is completely conclusory and threadbare in violation of

Iqbal. (See Complaint, ¶48) ("This policy is so consistent and widespread that it constitutes a custom or usage of which supervising policymakers must have been aware.").

Third, plaintiffs cannot demonstrate a widespread practice of "similar" constitutional violations. Plaintiffs rely on a series of blogs (11 individuals) which purport to demonstrate that those 11 cyclists were ticketed for crossing intersections during LPIs. (Complaint, ¶¶109-113). But plaintiffs have not cited to even one civil complaint, much less any "similar" constitutional adjudications against the City, as required by the aforementioned authorities. These blogs do not plausibly demonstrate "false arrests" at all. Moreover, the "blogs" are inadmissible hearsay, should not be considered, see McAllister v. New York City Police Department, 49 F. Supp. 2d 688, 705, n. 12 (S.D.N.Y. 1999), and are also "too generalized, isolated and attenuated to support an inference that there existed a pervasive unlawful municipal custom or policy." See Means v. City of New York, et. al., 15 Civ. 4855 (KBF), 2016 U.S. Dist. LEXIS 45865, at *18 (S.D.N.Y. April 5, 2016). Even accepting plaintiffs' allegations as true, eleven incidents over three years—in a city with 61,000 daily cyclists (see Complaint, ¶37)—plaintiffs' allegations cannot establish the "persistent and widespread" practice that Monell requires.

Fourth, the Complaint does not demonstrate that the alleged "custom or practice" was the "moving force" behind the summonses issued to plaintiffs. As such, plaintiffs' "custom or practice" municipal liability claim fails.

**B.    Municipal Failure to Train or Supervise**

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor

14

disregarded a known obvious consequence of his action." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (emphasis added). Although a municipality may be liable under §1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983." <u>Id.</u> ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" [or discipline]).

"[W]here a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation." <u>Wray</u>, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 193 (2d Cir. 2007).

To succeed on a "deliberate indifference" theory, a plaintiff must show (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." <u>Connick</u>, 563 U.S. at 61. With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." <u>Id.</u> at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). "[A] failure to act, train or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the

municipality or official can be found deliberately indifferent to the need.'" Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

Wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. Demaitre v. City of New York, 18 Civ. 12403 (PGG), 2020 U.S. Dist. LEXIS 189206, at *19-20 (S.D.N.Y. Oct. 11, 2020).

A handful of other incidents are also insufficient to "plausibly" allege municipal liability under a "failure to train" theory and courts have dismissed "failure to train" [or discipline] municipal liability allegations even where a handful or other complaints have been cited in a complaint without adjudications of liability. See An, supra, at 231 (six lawsuits and one newspaper article over a four year period insufficient to plausibly allege notice of the need for additional training under a failure to train theory); see also Simms v. City of New York, et. al., 480 Fed App'x 627, 630 (2d Cir. 2012) (Summary Order) ("[A]ll that the Complaint's reference to the other action establishes is that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as Simms alleges here, not that those violations actually occurred.")

Plaintiff must also plead that the City did not investigate any other "similar incidents" alleged in the Complaint, which is a necessary element of such a claim. An, supra, at 231 (complaint was inadequate as there was no allegation that the City, once on notice of a deficiency in its training programs, failed to investigate any such inadequacy).

Plaintiffs' failure to train or supervise claim fails for a number of reasons. First, as seen, there no plaintiff has pled an underlying constitutional violation. Second, plaintiffs' claim is improperly boilerplate and conclusory in violation of the above authorities and Iqbal. All that the Complaint alleges is that "[t]his policy and practice results directly from the failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." (Complaint, ¶49; see also Complaint, ¶153). Third, plaintiffs have not plausibly alleged deliberate indifference under Connick and its progeny because they have not alleged a pattern of similar complaints of the purported constitutional violations pled in the Complaint. Fourth, plaintiffs have not alleged a specific deficiency in the City's training programs as is required by Wray, supra. Fifth, plaintiffs have not in any way plausibly alleged a municipal failure to train or supervise was the "moving force" behind the subject incidents set forth in the Complaint or a sufficient connection under Wray between a municipal failure to train and the underlying incidents. Sixth, plaintiffs have not alleged that the City did not investigate any other similar incidents as set forth in the Complaint as required by the foregoing authorities. Plaintiffs' claim thus fails.

## POINT V

## PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

A.    **Legal Standard Upon Motion to Dismiss Pursuant to Rule 12(b)(1), Fed. R. Civ. P.**

"The task of the district court is to determine whether the [complaint] 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017) (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016)) (internal citations omitted). Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Warth v. Seldin, 422 U.S. 490, 502 (1975). At least one plaintiff must have standing for a class action to be maintained. Denny v. Deutsche Bank AG, 443 F.3d 253, 264-265 (2d Cir. 2006). The Court "accept[s] as true all material allegations of the complaint…and construe[s] the complaint in favor of the complaining party." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (quoting United States v. Vazquez, 145 F.3d 74, 81 (2d Cir. 1998)). However, "[a]

court considering a Rule 12(b)(1) motion may [also] consider evidence outside of the pleadings to determine whether subject-matter jurisdiction exists." Almareh v. Mayorkas, 20 Civ. 11024 (VEC), 2021 U.S. Dist. LEXIS 203546, at *4 (S.D.N.Y. Oct. 20, 2021) (citing Morrison v. Nat'l Austl. Bank, 547 F.3d 167, 170 (2d Cir. 2008)).

**B.    Legal Standard For Standing to Seek Injunctive Relief**

"An objection to standing is properly made on a Rule 12(b)(1) motion." Williams v. City of New York, 34 F. Supp.3d 292, 294 (S.D.N.Y. 2014) (quoting Tasini v. New York Times Corp., Inc., 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002)). "Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008).

"Standing for an equitable claim must appear on the face of the complaint in order to survive a motion to dismiss." O'Shea v. Littleton, 414 U.S. 488 (1974). "'A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action.'" An, supra, at 230 (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416-17 (2d Cir. 2015)). "'The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he or she] has standing to sue.'" Id. "When seeking injunctive relief against a municipality, a plaintiff has standing only if he can 'carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.''" An, supra, at 228 (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)) (internal quotation omitted).

To establish standing, a plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envt'l. Serv's. (TOC), Inc., 528 U.S. 167, 180-181 (2000). An "abstract injury is not enough." Shain, 356 F.3d at 215.

Under the leading case of City of Los Angeles v. Lyons, "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Shain, 356 F.3d at 216 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105–06 (1983)). "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." Harty v. Simon Property Group, L.P., 428 Fed. App'x. 69, 71 (2d Cir. 2011) (Summary Order) (citing Lyons at 105). In fact, a plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way." Marcavage v. The City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (quoting Lyons at 111). One past incident involving a particular plaintiff and the police has been found to be insufficient to confer standing. City of Los Angeles v. Lyons, supra.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea, supra, 414 U.S. at 495-96. The seminal case in this regard, Lyons, supra, "occupies much of the territory" related to a citizen's standing to seek an injunction against law enforcement practices surrounding arrests. Williams, supra, 34 F. Supp.3d at 296 (citing Shain, supra, 356 F.3d at 215). In Lyons, the plaintiff alleged that he feared again being subjected to an illegal chokehold, and given the extensive use of chokeholds by the Los Angeles police, that he should be afforded standing to seek injunctive relief. However, the United States Supreme Court held that the risk that plaintiff himself would come into contact with the police and be subjected to a subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. Id., at 109; see

also <u>MacIssac v. Town of Poughkeepsie</u>, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (plaintiff's claim that he would be stopped, arrested and subjected to a taser gun again was speculative, and injunctive relief therefore denied).

**C.    Plaintiffs Cannot Demonstrate a Likelihood of Future Harm**

Plaintiffs fail the first prong of the foregoing <u>Shain</u> test as the Complaint does not plausibly allege the likelihood of future harm as to any plaintiff. Rather, as seen above, each plaintiff relies exclusively on one ticket/summons that is pled in the Complaint (and which does not give rise to a constitutional violation). <u>Lyons</u> stands for the proposition that one past law enforcement interaction is insufficient to confer standing in arrest situations; <u>see</u> <u>also</u> <u>MacIssac</u>, <u>supra</u>; <u>Williams</u>, <u>supra</u>. For this reason alone, plaintiffs do not have standing to seek injunctive relief.

Further, any argument by plaintiffs that they will be harmed in a similar way is completely "speculative," "hypothetical," "abstract" and "conjectural" in nature. <u>Cf.</u> <u>Lyons</u>, <u>supra</u>, 461 U.S. at 101. While plaintiffs each allege that they "continue to bicycle routinely throughout New York City," (Complaint, ¶101), there are no well pled facts that they are likely to be summonsed in the same way again by any NYPD officer. If anything, the fact that each of them bicycles regularly in the City and that they allege an NYPD "crackdown" on cyclists generally, demonstrates the exact opposite, namely that their subject experiences were isolated incidents.

**D.    Plaintiffs Have Not Plausibly Alleged "a Formal Policy or Its Equivalent" Necessary to Confer Standing**

There is a split among district courts in this Circuit as to whether a showing sufficient for <u>Monell</u> liability is also sufficient to demonstrate a "formal policy or its equivalent" necessary to confer standing to seek injunctive relief under <u>Lyons</u>.  <u>See</u> <u>An v. City of New York</u>, 16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (collecting cases).  The City

respectfully submits that the Court should follow the cases which impose a more stringent requirement on plaintiffs in demonstrating a "formal policy or its equivalent."

This issue was squarely addressed in MacIssac v. Town of Poughkeepsie, supra. The MacIsaac court held that the "formal policy or its equivalent" requirement necessarily carries with it a "much narrower definition of an 'official policy' [than Monell], but one to which the courts of the Second Circuit have adhered when determining whether a particular plaintiff may seek injunctive relief." Id., at 597. The Complaint fails to meet the narrower "official policy or its equivalent" requirement. The Complaint fails to point to any official policy of the City to regularly violate the rights of bicyclists. As such, plaintiffs lack standing to seek injunctive relief.

**E.    Even Applying the Monell Standard, Plaintiffs Fail to Plausibly Allege a "Formal Policy or its Equivalent"**

Even if the Court applies the same standard as is required to bring a claim for municipal liability in its determination of whether plaintiffs have pled a "formal policy or its equivalent," which a number of courts have, see An, supra, 2017 U.S. Dist. LEXIS 84364, at *8, for the reasons set forth in Point IV, supra, plaintiffs' claim for injunctive relief fails.

**F.    Plaintiffs' Class Allegations Seeking Injunctive Relief Should Be Dismissed**

Since no named plaintiff has standing to seek injunctive relief, no injunctive relief may be obtained on behalf of the purported class either. See Denny, supra.

**POINT VI**

**THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**

"Under 28 U.S.C. § 1367(a), federal courts have jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." Seabrook v. Jacobson, 153 F.3d 70, 71 (2d Cir. 1998). "Subsection (c) of § 1367 lists several circumstances in

21

which the federal court may choose not to exercise that jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Id. "Other than the catch-all provision, the listed circumstances reflect concerns about the relationship between state and federal courts." Id.

The Court should decline to exercise supplemental jurisdiction over plaintiffs' state and local law claims considering the lack of any viable federal claims. See 28 U.S.C. § 1367(3); Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). As the Second Circuit has articulated, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over the remaining state law claims." Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006). In the "usual case" where all federal claims "are eliminated before trial" the balance of factors to be considered – judicial economy, convenience, fairness, and comity – "will point toward declining to exercise jurisdiction over the remaining state law claims." Kolari, supra. As seen, plaintiffs have failed to plausibly allege any federal claims. As such, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

However, even if certain of plaintiffs' federal claims survive, under the foregoing authorities, the Court should still decline jurisdiction over plaintiffs' state law claims. The Complaint demonstrates that the local law issues substantially predominate over the federal issues alleged. Thus, for this reason as well, supplemental jurisdiction should be declined by the Court.

## POINT VII

## <u>PLAINTIFFS' STATE LAW MALICIOUS PROSECUTION CLAIMS FAIL</u>

The plaintiffs Esparza and Lee both bring state law malicious prosecution claims. (Fourth Cause of Action). "[A] warrantless summons, demanding only a court appearance, cannot provide the basis for a malicious prosecution claim, under either §1983 or state law." <u>Goodman v. City of New York</u>, 23 Civ. 9648 (JGLC)(GWG), 2024 U.S. Dist. LEXIS 131610, at *56, n.10 (S.D.N.Y. July 25, 2024) (M.J. Gorenstein) (internal quotation omitted), <u>adopted by</u>, 2024 U.S. Dist. LEXIS 155779 (S.D.N.Y. Aug. 29, 2024). As such, dismissal of these claims is proper on this basis alone.

## POINT VIII

## <u>PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN</u>

Plaintiffs' attempt to convert this lawsuit into a class action should be rejected and their class action allegations stricken. "Whether to grant or deny a motion to strike lies within the court's sound discretion." <u>Garcia v. Execu/Search Grp., LLC</u>, 17 Civ. 9401 (WHP), 2019 U.S. Dist. LEXIS 68904, at *3 (S.D.N.Y. Feb. 19, 2019). "If the 'complaint itself demonstrates that the requirements for maintaining a class action cannot be met,' the Court may strike the class allegations at any practicable time after the suit has been filed." <u>Shaw v. Hornblower Cruises & Events, LCC</u>, 21 Civ. 10408 (VM), 2022 U.S. Dist. LEXIS 202703, at *12 (S.D.N.Y. Nov. 7, 2022) (internal quotation omitted); <u>see also</u> <u>Camacho v. City of New York, et. al.,</u> 19 Civ. 11096 (DLC), 2020 U.S. Dist. LEXIS 125801, at *9-11 (S.D.N.Y. July 16, 2020) (striking class allegations before a motion for class certification was filed because it was "already clear" that the defects in the class allegations could not be cured); <u>Borgese v. Baby Brezza Enters. LLC</u>, 20 Civ. 1180 (VM), 2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021) (striking class allegations where there were only conclusive allegations about other class members and the Court's skepticism about whether the claims in the case were suitable for class resolution on the merits).

"[T]he plausibility standard will generally apply to such motions." Id., at *6 (citing Talarico v. Port Auth. of N.Y. and N.J., 367 F. Supp.3d 161, 173 (S.D.N.Y. 2019)) ("[A] motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members."). "When the issues are 'plain enough from the pleadings,' they may be resolved without further discovery." Shaw, supra, at *12 (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).

Plaintiffs' class allegations should be stricken for a number of reasons. First, since no named plaintiff has standing to seek injunctive relief, no injunctive relief may be obtained on behalf of the purported class. See Denny, supra. Likewise, since all of plaintiffs' claims should be dismissed, they cannot be adequate class representatives[3]. See Passman v. Peloton Interactive, Inc., 19 Civ. 11711 (LGS), 2025 U.S. Dist. LEXIS 84144, at *4 (S.D.N.Y. May 2, 2025)

Second, plaintiffs' assertion that there are 40 class members, the presumptive number to ¶¶Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)), is speculative and the Complaint is completely conclusory as to the existence of other class members.

Third, it is clear that the requirements of commonality, typicality and predominance (Rules 23(a)(2) and (3) and 23(b)(3)) cannot be met because resolution of plaintiffs' claims would require individualized determinations that do not lend themselves to class treatment. See Haus v. City of New York, 03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735, at *317 (S.D.N.Y. Aug. 31, 2011) (M.J. Dolinger) (neither commonality nor typicality will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability.).

---

[3] All of plaintiffs' class claims are dependent on their insufficient allegation that the City has an unconstitutional practice pursuant to Monell.

24

In this regard, at a minimum, it is clear that there are numerous individualized determinations that dictate against class treatment due to plaintiffs' clear inability to meet Rule 23's requirements, i.e., was each bicyclist's conduct lawful and did each follow traffic requirements?; were the traffic signals fully functioning as LPIs at the time of occurrence? Even the issues raised by plaintiffs in the Complaint would require individualized determinations, i.e., those raised in ¶¶129 (i) and (iii) of the Complaint as to each officer's understanding of applicable law and the alleged "acquiescence" of "supervisory" personnel in the acts of each subordinate officer. Further, just to determine whether a bicyclist was crossing at an intersection during an LPI would require an individualized determination (that likely would not be ascertainable by looking at a summons for running a red light). As such, for this reason as well, plaintiffs' class allegations should be stricken.

## CONCLUSION

For the foregoing reasons, defendants' motions should be granted in their entirety, the Complaint dismissed with prejudice and plaintiffs' class allegations stricken.

Dated:      New York, New York
            October 6, 2025


                                MURIEL GOODE-TRUFANT
                                Corporation Counsel of the
                                  City of New York
                                Attorney for Defendants City of New York, Jessica
                                Tisch, Edward Caban, Thomas Donlon, Keechant
                                Sewell, Kenney Vega, Jonathan Pessoa, Thomas
                                Keller, Giovanni Martino and Shaye Lall
                                100 Church Street, Room 3-200
                                New York, New York 10007


                        By:    /s/ Mark D. Zuckerman
                                MARK D. ZUCKERMAN
                                JACK MCLAUGHLIN

25

**CERTIFICATE OF COMPLIANCE**

I, Mark Zuckerman, certify that the Memorandum of Law in support of defendants'
motions contains 8,018 words (including footnotes, in accordance with Rule III(D) of the Court's
Rules of Practice) and complies with the Court's formatting rules. I have relied on the word count
function of Microsoft Word to prepare this certification.

Dated: New York, New York
        October 6, 2025

                                                        /s/ Mark D. Zuckerman
                                                        Mark Zuckerman
                                                        Senior Counsel