UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVER CASEY ESPARZA; PHILLIP NASRALLAH;
WILLIAM THOMAS BLOXHAM; ANKIT GUPTA; JAY
HARPER; RICHARD LEE; and KATHERINE PENDER,
on their own behalf and on behalf of others similarly
situated,

                Plaintiffs,

      v.

CITY OF NEW YORK; JESSICA S. TISCH;
POLICE OFFICER KENNEY F. VEGA;
POLICE OFFICER JONATHAN A. PESSOA;
POLICE OFFICER THOMAS J. KELLER;
POLICE OFFICER GIOVANNI P. MARTINO;
POLICE OFFICER SHAYE LALL;
and JOHN/JANE DOES 1-100,

                Defendants.

Case No. 25 Civ. 3815 (DLC)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

WANG HECKER LLP
Alexander Goldenberg
Daniel Mullkoff
Mariann Meier Wang
Eric Hecker
Lily Sawyer-Kaplan
Jahne Brown*
111 Broadway, Suite 1406
New York, New York 10006

*Attorneys for Plaintiffs and the
Putative Class*

*SDNY admission pending

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ..................................................................................... 2

LEGAL STANDARD.................................................................................................. 4

ARGUMENT ............................................................................................................... 4

    I.      DEFENDANTS KELLER AND PESSOA WERE TIMELY SERVED ................... 4

    II.     PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR FALSE ARREST ............. 5

        A.  Plaintiffs' Allegations Support False Arrest Claims.............................................. 5

        B.  Claims for Plaintiffs Whose Summonses are Unresolved Should be Stayed,
           Not Dismissed .................................................................................................9

    III.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED MUNICIPAL LIABILITY ............ 11

        A.  Widespread Custom and Practice ..................................................................... 12

        B.  Failure to Train or Supervise ......................................................................... 17

    IV.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED DEFENDANT TISCH'S
         LIABILITY ....................................................................................................... 20

    V.     PLAINTIFFS HAVE STANDING TO PURSUE THEIR
         INJUNCTIVE CLAIMS ..................................................................................... 21

        A.  Legal Standard ............................................................................................ 22

        B.  Likelihood of Future Harm ............................................................................ 22

        C.  Official Policy or its Equivalent ..................................................................... 26

    VI.    THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER
         PLAINTIFFS' NON-FEDERAL CLAIMS .............................................................. 28

    VII.   STRIKING THE CLASS ALLEGATIONS WOULD BE IMPROPER ................... 29

CONCLUSION ......................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE*,
    811 F. Supp. 2d 803 (S.D.N.Y. 2011)......................................................................... 27

*Allaire Corp. v. Okumus*,
    433 F.3d 248 (2d Cir. 2006)...................................................................................... 4

*Amnesty Am. v. Town of W. Hartford*,
    361 F.3d 113 (2d Cir. 2004)...................................................................................... 17

*Amore v. Novarro*,
    624 F.3d 522 (2d Cir. 2010)............................................................................... passim

*An v. City of New York*,
    No. 16 Civ. 5381 (LGS), 2017 WL 2376576 (S.D.N.Y. June 1, 2017)........................... passim

*Anderson v. County of Nassau*,
    297 F. Supp. 2d 540 (E.D.N.Y. 2004) ................................................................. 28, 29

*Banyan v. Sikorski*,
    No. 17 Civ. 4942 (LJL), 2021 WL 3271735 (S.D.N.Y. July 30, 2021) ........................... 10

*Battle v. City of New York*,
    No. 11 Civ. 3599 (RMB), 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) ........................... 27

*Beck v. City of New York*,
    No. 12 Civ. 9231 (RA), 2014 WL 80544 (S.D.N.Y. Jan. 3, 2014)................................. 7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................... 4, 14, 17

*Bolden v. City of Topeka*,
    441 F.3d 1129 (10th Cir. 2006) ................................................................................ 5

*Boyd v. City of New York*,
    336 F.3d 72 (2d Cir. 2003)....................................................................................... 9

*Brait Builders Corp. v. Mass. Div. of Cap. Asset Mgmt.*,
    644 F.3d 5 (1st Cir. 2011) ....................................................................................... 5

*Burg v. Gosselin*,
    591 F.3d 95 (2d Cir. 2010)............................................................................... 5, 7, 8, 9

*Bussey v. Devane*,
    No. 13 Civ. 3660 (JS), 2013 WL 4459059 (E.D.N.Y. Aug. 16, 2013)...................................... 10

*Calvo v. City of New York*,
    No. 14 Civ. 7246 (VEC), 2018 WL 1633565 (S.D.N.Y. Apr. 2, 2018) ................................. 33

*Case v. City of New York*,
    233 F. Supp. 3d 372 (S.D.N.Y. 2017)...................................................................................... 18

*Chavez v. Finney*
    No. 19 Civ. 4109 (RA), 2022 WL 874716 (S.D.N.Y. Mar. 23, 2022) ................................. 7, 8

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)...................................................................................... 29

*City of Canton v. Harris*,
    489 U.S. 378 (1989)................................................................................................................. 11

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983)............................................................................................ 23, 24, 25, 27

*Curtis v. City of New Haven*
    726 F.2d 65 (2d Cir. 1984)................................................................................................. 27, 28

*D.H. v. City of New York*,
    309 F. Supp. 3d 52 (S.D.N.Y. 2018)....................................................................................... 26

*Deakins v. Monaghan*,
    484 U.S. 193 (1988)................................................................................................................. 11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)............................................................................................. 22, 28

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998)..................................................................................................... 22

*DiPippo v. County of Putnam*,
    No. 17 Civ. 7948 (NSR), 2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019)................................. 12

*Edwards v. City of New York*,
    No. 14 Civ. 10058 (KBF), 2015 WL 5052637 (S.D.N.Y. Aug. 27, 2015)............................... 17

*El v. Black*,
    No. 23 Civ. 10317 (JAV), 2025 WL 1707817 (S.D.N.Y. June 18, 2025)............................... 10

*Ferrari v. County of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ................................................... 13

*Floyd v. City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2012) ................................................. 25, 26

*Gavin v. City of New York*,
    No. 20 Civ. 8163 (JPO), 2021 WL 3774113 (S.D.N.Y. Aug. 24, 2021) ........................... 12, 15

*Goetz v. Ainsworth Pet Nutrition, LLC*,
    768 F. Supp. 3d 645 (S.D.N.Y. 2025) .................................................. 29, 30, 32

*Gonzalez v. New York City*,
    No. 16 Civ. 00254 (CM), 2016 WL 7188147 (S.D.N.Y. Dec. 2, 2016) ................................ 15

*Greenway II, LLC v. Wildenstein & Co.*,
    No. 19 Civ. 4093 (JCM)(RWL), 2019 WL 11278321 (S.D.N.Y. Oct. 8, 2019) ...................... 14

*Harris v. Westchester Cty. Med. Ctr.*,
    No. 08 Civ. 1128 (RJH)(KNF), 2010 WL 2674545 (S.D.N.Y. July 1, 2010) ........................... 5

*Haus v. City of New York*,
    No. 03 Civ. 04915 (S.D.N.Y. Aug. 31, 2011) ................................................. 32, 33

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ................................................................... 10

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ............................................................ 25

*Javid v. Scott*,
    913 F. Supp. 223 (S.D.N.Y. 1996) ........................................................ 29

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) .............................................................. 22

*Jones v. County of Westchester*,
    678 F. App'x 48 (2d Cir. 2017) ........................................................... 11

*Ki v. City of New York*,
    No. 20 Civ. 4343 (ARR)(JRC), 2022 WL 5423642 (E.D.N.Y. Sept. 1, 2022) ...................... 13

*Kirschner v. Klemons*,
    225 F.3d 227 (2d Cir. 2000) .............................................................. 10

*Knife Rts., Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015)..................................................................................... 23

*L.B. v. Town of Chester*,
  232 F. Supp. 2d 227 (S.D.N.Y. 2002)...................................................................... 21

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................. 22

*Lynch v. City of New York*,
  335 F. Supp. 3d 645 (S.D.N.Y. 2018)...................................................................... 28

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020)................................................................. 12, 14, 15, 16

*MacIssac v. Town of Poughkeepsie*
  770 F. Supp. 2d 587 (S.D.N.Y. 2011).......................................................... 24, 27, 28

*Martinez v. NYPD*,
  No. 19 Civ. 9885 (AJN), 2021 WL 4206944 (S.D.N.Y. Aug. 9, 2021) ................... 11

*McAllister v. NYPD*
  49 F. Supp. 2d 688 (S.D.N.Y. 1999)........................................................................ 14

*McCants v. City of Newburgh*,
  No. 14 Civ. 556 (VB), 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014) ..................... 13

*Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*,
  72 F. Supp. 2d 560 (D. Md. 1999)........................................................................... 25

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*,
  No. 16 Civ. 5265 (JPO), 2018 WL 1773142 (S.D.N.Y. Apr. 12, 2018)................... 31

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978)........................................................................................ passim

*Narvaez v. City of New York*,
  No. 16 Civ. 1980 (GBD), 2017 WL 1535386 (S.D.N.Y. Apr. 17, 2017).................. 13

*Nat'l Cong. for Puerto Rican Rts. v. City of New York*,
  75 F. Supp. 2d 154 (S.D.N.Y.).................................................................................. 23

*Nigro v. City of New York*,
  No. 19 Civ. 2369 (JMF), 2020 WL 5503539 (S.D.N.Y. Sept. 11, 2020)................. 18

*Ostenfeld v. Laundress, LLC,*
   No. 22 Civ. 10667 (JMF), 2024 WL 967124 (S.D.N.Y. Mar. 5, 2024) ................................... 30

*Osterhoudt v. City of New York,*
   No. 10 Civ. 3173 (RJD)(RML), 2012 WL 4481927 (E.D.N.Y. Sept. 27, 2012)..................... 15

*Packard v. City of New York,*
   No. 15 Civ. 7130 (AT), 2017 WL 11580855 (S.D.N.Y. July 17, 2017) ................................ 17

*Patane v. Clark,*
   508 F.3d 106 (2d Cir. 2007)........................................................................................................ 4

*Peterec v. City of New York,*
   No. 14 Civ. 309 (RJS), 2015 WL 1027367 (S.D.N.Y. Mar. 6, 2015) ................................. 5, 8

*Reyes v. Cty. of Suffolk,*
   995 F. Supp. 2d 215 (E.D.N.Y. 2014) ................................................................................... 13

*Reynolds v. Lifewatch, Inc.,*
   136 F. Supp. 3d 503 (S.D.N.Y. 2015).............................................................................. 29, 30

*Rivers v. McLeod,*
   252 F.3d 99 (2d Cir. 2001)........................................................................................................ 11

*Rodriguez v. City of New York,*
   No. 15 Civ. 07945, 2018 WL 1276826 (S.D.N.Y. Mar. 9, 2018) .......................................... 15

*Roe v. City of New York,*
   151 F. Supp. 2d 495 (S.D.N.Y. 2001)................................................................... 24, 25, 26, 27

*Rutherford v. City of Mount Vernon,*
   698 F. Supp. 3d 574 (S.D.N.Y. 2023)..................................................................................... 19

*Schlick v. Penn-Dixie Cement Corp.,*
   507 F.2d 374 (2d Cir. 1974)...................................................................................................... 14

*Shain v. Ellison,*
   356 F.3d 211 (2d Cir. 2004)............................................................................. 22, 26, 27, 28

*Silva v. Farrish,*
   47 F.4th 78 (2d Cir. 2022) ....................................................................................................... 24

*Sims v. City of New York,*
   No. 15 Civ. 2485 (AT)(RLE), 2017 WL 11827091 (S.D.N.Y. Aug. 28, 2017)...................... 18

*Singleton v. State of New York*,
  No. 98 Civ. 0414 (LAP), 1998 WL 438530 (S.D.N.Y. July 31, 1998) .................................. 10

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ........................................................................................................ 4

*Stegemann v. Rensselaer County Sheriff's Off.*,
  648 F. App'x 73 (2d Cir. 2016) ...................................................................................... 10

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) .................................................................................... 31

*Swartz v. Insogna*,
  704 F.3d 105 (2d Cir. 2013) ............................................................................................ 5

*Sykes v. Mel Harris & Assocs., LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012) .................................................................................... 31

*Terry v. Ohio*,
  392 U.S. 1 (1968) ............................................................................................................. 5

*Thomas v. Colgate-Palmolive Co.*,
  No. 23 Civ. 1426 (VB), 2024 WL 5200022 (S.D.N.Y. Dec. 23, 2024) ........................... 30, 32

*Tirado v. City of New York*,
  No. 19 Civ. 10377 (LAK)(SN), 2021 WL 11646299 (S.D.N.Y. Jan. 25, 2021) ............... 12, 15

*Vann v. City of New York*,
  72 F.3d 104 (2d Cir. 1995) .............................................................................................. 20

*Vasquez Perdomo v. Noem*,
  148 F.4th 656 (9th Cir. 2025) ......................................................................................... 27

*Vasquez v. Pampena*,
  No. 08 Civ. 4184, 2009 WL 1373591 (E.D.N.Y. May 18, 2009) ................................... 6, 7, 8

*Wallace v. Kato*,
  549 U.S. 384 (2007) ......................................................................................................... 10

*Williams v. City of New York*,
  34 F. Supp. 3d 292 (S.D.N.Y. 2014) ............................................................................... 25

*Williams v. City of New York*,
  690 F. Supp. 2d 338 (S.D.N.Y. 2010) ............................................................................. 17

*Woods v. City of New York*,
   No. 14 Civ. 5866 (FB), 2016 WL 623630 (E.D.N.Y. Oct. 25, 2016)................................. 5, 6, 8

*Yi Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................... 31

**Statutes and Rules**

42 U.S.C. § 1983 .......................................................................................................... 5

Federal Rule of Civil Procedure 12 ........................................................................ 4, 29

Federal Rule of Civil Procedure 23 ............................................................ 29, 30, 31, 33

N.Y.C. Admin. Code 19-195.1(b)........................................................................... 3, 32

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. § 1137 (3d ed. 1998) ............................................ 5

## PRELIMINARY STATEMENT

To reduce bicyclist deaths on New York City roadways, the New York City Council passed a law in 2019 that allows cyclists to enter intersections when the pedestrian signal shows white/walk, even if the traffic light is still red.  While City transportation officials have worked to promote this law and cyclist safety, the New York City Police Department ("NYPD") has done the opposite:  it has maintained a policy and practice of stopping, detaining, and issuing summonses to cyclists who follow the 2019 law.  This case is about the NYPD's systematic violation of the constitutional rights of Plaintiffs and other similarly situated cyclists.

Plaintiffs' substantive Fourth Amendment claims, and their related claims under state and local law, are supported by Second Circuit and district court precedents directly on point.  For Plaintiffs whose summonses have not yet been resolved, the solution is to stay their damages claims, not dismiss them.

Plaintiffs also plausibly allege *Monell* liability for both the NYPD's unlawful policy and practice and its failure to train.  Plaintiffs allege 22 instances of unlawful detentions, identify a successful Article 78 proceeding against the City challenging an improper summons, cite news articles reporting on the relevant problem, and describe multiple instances of NYPD officers misstating the law, including under oath and on camera.  Especially at the pleading stage, these allegations establish a pervasive practice of which the City had notice, and for which the City's failure to train and supervise its officers was a driving force.

Finally, Plaintiffs have standing to pursue injunctive relief because they are likely to be detained again for engaging in lawful activity that is part of their regular routines.  And the City's challenge to the damages class is at best premature, coming before class discovery and class certification briefing.

For these reasons, and those that follow, the Court should deny Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

The following is a summary of the facts alleged in the Second Amended Complaint ("SAC"), ECF No. 59.  Plaintiffs include further factual details below as relevant to specific arguments.

The number of bicycle commuters in New York City has risen dramatically in the past two decades.  SAC ¶ 34.  The City launched its "Vision Zero" initiative in 2014 with the aim of eliminating traffic fatalities and injuries.  *Id.* ¶ 35.  But despite some improvements because of those efforts, cycling in New York City remains highly dangerous.  *Id.*  2023 saw the highest number of cyclist fatalities since 1999.  *Id.*

The City has since 2014 prioritized installing "Leading Pedestrian Intervals" or "LPIs" at thousands of intersections.  *Id.* ¶ 36.  An LPI causes the pedestrian signal to turn to white/walk several seconds before the traffic signal turns green, which gives pedestrians and cyclists a head start.  *Id.*  This makes pedestrians and cyclists more visible to drivers.  *Id.*

The New York City Department of Transportation ("DOT") has found that LPIs significantly reduce the number of pedestrians and cyclists injured or killed by left-turning vehicles.  *Id.* ¶ 37.  In 2019, DOT published the results of a successful pilot program in which cyclists were permitted to cross during the LPI at 50 intersections.  *Id.* ¶ 38.  DOT recommended that cyclists be allowed to follow pedestrian signals citywide, so long as cyclists yield to pedestrians and DOT could exempt certain intersections through signage.  *Id.*

The New York City Council followed this recommendation and enacted Local Law 154, effective December 21, 2019, to clarify that cyclists are permitted to cross intersections when the pedestrian light shows a white/walk signal:

> A person operating a bicycle while crossing an intersection shall follow pedestrian control signals except where otherwise indicated by traffic control devices, and provided that such person shall yield to pedestrians in the crosswalk.

N.Y.C. Admin. Code 19-195.1(b); SAC ¶ 39.  Since then, DOT has worked to inform cyclists of this law and advised that cyclists should "go with the walk" because "this is a safe way to reduce stressful interactions at intersections."  SAC ¶¶ 40-42.

Despite this statute, the City, acting through the NYPD, maintains a policy and practice of unlawfully detaining and ticketing cyclists who rightfully ride through intersections when the pedestrian signal indicates white/walk.  *Id.* ¶ 44.  The NYPD has undermined the efforts of transportation officials to enhance cyclist safety and routinely violated the rights of cyclists through its unlawful practice and failure to train.  *Id.* ¶¶ 12-13, 44-46.

All seven named Plaintiffs were subjected to this unlawful practice:  they cycled through intersections during LPIs, as the law permits and transportation officials recommend, but they were unlawfully stopped, detained, and issued summonses by NYPD officers.  *Id.* ¶¶ 47-104.  Plaintiffs' experiences are representative of the hundreds of cyclists who have been unlawfully stopped and ticketed by the NYPD for crossing intersections while the pedestrian light indicated white/walk.  *Id.* ¶¶ 118-38.  And Plaintiffs are likely to be subjected to additional unlawful seizures because they continue to go with the walk during their frequent bicycle commutes, including through specific intersections and thoroughfares where NYPD officers have ticketed cyclists for failing to obey red lights at significantly higher rates than the City overall.  *Id.*

¶¶ 105-14.  Plaintiffs therefore seek injunctive relief and damages for themselves and other similarly situated cyclists.

The Complaint was filed on May 7, 2025.  ECF No. 1.  Plaintiffs filed their Amended Complaint on July 30, 2025, which named additional Plaintiffs and Officer Defendants.  ECF No. 15.  Defendants then moved to dismiss.  ECF No. 53.  Plaintiffs filed the SAC on November 14, 2025, and Defendants again moved to dismiss.  ECF No. 60.  Pursuant to this Court's Order dated October 23, 2025, ECF No. 58, Plaintiffs timely submit this brief in opposition to Defendants' motion.

## LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "assess[] the legal sufficiency of a claim."  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).  When deciding a Rule 12(b)(6) motion, a court must accept the factual allegations contained in the complaint as true and draw all inferences in favor of the plaintiff.  *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint will survive a 12(b)(6) motion if it is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The question is not whether Plaintiffs will ultimately prevail, "but whether [the] complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).  The Court must deny Defendants' motion if Plaintiffs have alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that substantiates their allegations.  *Twombly*, 550 U.S. at 556.

## ARGUMENT

## I.    DEFENDANTS KELLER AND PESSOA WERE TIMELY SERVED.

Defendants Pessoa and Keller move to dismiss pursuant to Rule 12(b)(5) because they were served more than 90 days after the initial Complaint was filed.  Defs.' Mem. of Law, ECF No. 61 ("Defs.' Br.") at 5.  But those Defendants were not named in the original Complaint, they

were first added in the Amended Complaint that Plaintiffs filed on July 30, 2025. "[A]dding a
new party through an amended complaint initiates a new [90]–day timetable for service upon the
added defendant." *Harris v. Westchester Cty. Med. Ctr.*, No. 08 Civ. 1128 (RJH)(KNF), 2010
WL 2674545, at *1 (S.D.N.Y. July 1, 2010) (quoting 4B Wright & Miller, Fed. Prac. & Proc.
§ 1137 (3d ed. 1998)); *see also Brait Builders Corp. v. Mass. Div. of Cap. Asset Mgmt.*, 644 F.3d
5, 9 (1st Cir. 2011) (same); *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006)
(same). Defendants Pessoa and Keller were served on August 6 and August 12, 2025,
respectively, ECF Nos. 47 & 49, well within 90 days of July 30, 2025.

## II.    PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR FALSE ARREST.

### A.    Plaintiffs' Allegations Support False Arrest Claims.

Defendants contend that Plaintiffs have failed to state a claim for false arrest. Under
Second Circuit precedents directly on point, Defendants are wrong.

"[W]henever a police officer accosts an individual and restrains his freedom to walk
away, he has 'seized' that person." *Swartz v. Insogna*, 704 F.3d 105, 109-10 (2d Cir. 2013)
(quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). The Second Circuit has therefore held that "a
plaintiff pleads a seizure when he alleges that a police officer held on to his identification and
ordered him to stay put while the police officer wrote out a summons." *Amore v. Novarro*, 624
F.3d 522, 532 n.13 (2d Cir. 2010) (quoting *Burg v. Gosselin*, 591 F.3d 95, 96 n.3 (2d Cir. 2010)).
District courts have similarly ruled that "[a] person is sufficiently seized to make a § 1983 claim
for false arrest when he or she is detained by a police officer and told to remain in place so that
the police officer can write a summons." *Peterec v. City of New York*, No. 14 Civ. 309 (RJS),
2015 WL 1027367, at *2 (S.D.N.Y. Mar. 6, 2015); *see also Woods v. City of New York*, No. 14
Civ. 5866 (FB), 2016 WL 6236309, at *3 (E.D.N.Y. Oct. 25, 2016) (holding that "detention

while issuing a summons constitutes a seizure"); *Vasquez v. Pampena*, No. 08 Civ. 4184, 2009 WL 1373591, at *2-6 (E.D.N.Y. May 18, 2009) (engaging in extensive Fourth Amendment analysis and holding that detention during issuance of summons is an arrest). Plaintiffs' allegations fit squarely within these precedents.

Defendants' attempts to distinguish these cases fail. First, Defendants suggest that Plaintiffs have asserted claims for false arrest but not unlawful seizure, Defs.' Br. 7, but Plaintiffs expressly allege that each of them was "unreasonably seized," SAC ¶¶ 223-29. Moreover, this is a distinction without a difference in this context. *Amore* rejected a similar semantic argument and held that a plaintiff's "detention was a Fourth Amendment seizure for purposes of a false arrest claim" where the officer held the plaintiff's identification and "ordered him to stay" while issuing a summons. 624 F.3d at 532 n.13. *Vasquez* similarly held that if the facts establish a Fourth Amendment seizure, they allege "sufficient confinement to maintain a false arrest action under § 1983." 2009 WL 1373591, at *5.

Second, Defendants argue that Plaintiffs' allegations are conclusory and merely state that they were improperly "detained." Defs.' Br. 8. Defendants' own brief belies that contention in its detailed recitation of the facts concerning Plaintiffs' encounters with the police. *Id.* 1-4.

In every instance, Plaintiffs were lawfully operating their bicycles when Officer Defendants directed them to stop. SAC ¶¶ 49-50, 60-63, 69-71, 76-78, 87-89, 94-97. Once each Plaintiff complied, officers demanded that they produce identification. *Id.* ¶¶ 52, 63, 71, 79, 89, 97. The Officer Defendants then communicated explicitly or implicitly that Plaintiffs were not

free to leave until they returned Plaintiffs' identification, issued summonses, and concluded the coercive encounters.[1]  *Id.* ¶¶ 51-53, 64-66, 71, 74, 79, 83, 92, 97, 101, 103-104.

The cases Defendants cite to support their argument that Plaintiffs have alleged insufficient facts demonstrate why Defendants are wrong.  In *Chavez v. Finney*, this Court cited *Amore*, *Burg*, and *Vasquez* and held that "a person is sufficiently detained for him to have been 'arrested' for purposes of bringing a false arrest claim when he is told to remain in place while an officer writes out a summons."  No. 19 Civ. 4109 (RA), 2022 WL 874716, at *7 (S.D.N.Y. Mar. 23, 2022) (citation omitted).  The Court determined, however, that because the *pro se* plaintiff alleged that officers had instructed him to leave the scene where he was summonsed, his pleading contradicted any claim that he was compelled to remain in place.  *Id.* at *8.

Similarly, in *Beck v. City of New York*, this Court cited *Amore* and observed that "[i]f Plaintiff was in fact detained at the scene of the accident while officers wrote out the summonses, she may have a plausible claim that she was seized under the Fourth Amendment."  No. 12 Civ. 9231 (RA), 2014 WL 80544, at *3 (S.D.N.Y. Jan. 3, 2014).  The Court then dismissed the plaintiff's claim because she alleged that officers had issued and delivered her summonses hours after the accident at issue, thereby precluding any inference that she was detained while officers issued summonses.  *Id.*

---

[1] Plaintiff Bloxham did not have identification with him when he was stopped.  SAC ¶ 63.  Defendant Pessoa compelled Mr. Bloxham to produce his phone and identify himself to Defendant Pessoa's satisfaction.  *Id.* ¶ 64.  After Mr. Bloxham complied, Defendant Pessoa did not allow Mr. Bloxham to leave until issuing him a summons.  *Id.* ¶ 66.  The wait was stressful to Mr. Bloxham, who needed to catch a train for Thanksgiving.  *Id.*  Had Mr. Bloxham been free to leave, he would have left.  Like the other Plaintiffs, Mr. Bloxham was compelled to identify himself and remain while Defendant Pessoa completed the summons process.  It is immaterial that he did not have his driver's license.

Unlike in *Chavez* and *Beck*, Plaintiffs do not allege that officers instructed them to leave the scene or issued them summonses hours after they were stopped.  Rather, every Plaintiff was immediately detained, asked for identification, and compelled by the Officer Defendants to remain present until their summonses were issued.  Under *Amore*, *Burg*, *Peterec*, *Vasquez*, *Chavez*, *Beck*, and *Woods*, Plaintiffs have stated a claim for false arrest.

Defendants also argue that Plaintiffs have failed to allege the use of physical force, quote the exact language used by the Officer Defendants, or aver that they asked permission to leave. Defs.' Br. 8.  Defendants cite no case that imposes those requirements.  Moreover, Plaintiffs have described specific conversations with the officers, including exchanges in which Plaintiffs explained the LPI law, but officers rejected those (correct) explanations and refused to allow Plaintiffs to leave until they issued summonses.  SAC ¶¶ 50, 65, 72, 80, 90.

On a motion to dismiss, the question is whether Plaintiffs have alleged sufficient facts to support a plausible inference that they were detained and compelled to remain in place while the officers wrote their summonses.  Not only is that inference plausible, but it would be manifestly implausible – if not absurd – to suggest that Plaintiffs could have freely ended their encounters without facing serious consequences after the police directed them to stop, held onto their identification, and began to issue summonses.

Third, Defendants cite *Burg* for the proposition that Plaintiffs cannot establish claims for false arrest based on the court appearances they made following issuance of their summonses. Defs.' Br. 8.  Plaintiffs do not contend otherwise.  Their false arrest claims arise from the seizures during their interactions with the police.  *Burg* expressly distinguished such allegations from claims related to post-summons obligations.  591 F.3d at 97.

Finally, Defendants accuse Plaintiffs of trying "to turn the issuance of every non-felony traffic tickets/summons into a false arrest claim." Defs.' Br. 8. Plaintiffs do not attempt to expand the law beyond what the Second Circuit and district courts have already held. They assert false arrest claims based on facts that fall squarely within the Second Circuit's *Burg/Amore* framework. This Court should disregard Defendants' attempt to avoid controlling precedent by invoking hypotheticals.

For the foregoing reasons, Plaintiffs have stated a false arrest claim under the Fourth Amendment. As Defendants note, in this context, the same analysis governing Plaintiffs' federal constitutional claim applies to their related claims under New York common law, the New York Constitution, and the New York City Administrative Code. Defs.' Br. 9 (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). *Boyd* held that "the elements of false arrest . . . under § 1983 are 'substantially the same' as the elements under New York law," and therefore, that "the analysis of the state and the federal claims is identical." 336 F.3d at 75 (citation omitted). Because Plaintiffs have stated a claim for false arrest under the Fourth Amendment, their related claims under state and local law must also survive.

### B. Claims for Plaintiffs Whose Summonses are Unresolved Should be Stayed, Not Dismissed.

The Court should stay the false arrest damages claims for Plaintiffs Nasrallah, Bloxham, Gupta, and Harper until the conclusion of their ongoing state court proceedings, contrary to Defendants' contention that their claims should be dismissed.[2] Where a false arrest claim is filed before the underlying criminal proceeding has concluded, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the

---

[2] Plaintiffs Casey Esparza, Lee, and Pender's state court proceedings have all resolved favorably.

likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Stegemann v. Rensselaer County Sheriff's Off.*, 648 F. App'x 73, 78 (2d Cir. 2016) (explaining that "the Supreme Court has expressly noted the general appropriateness of such a course"). Courts in this Circuit routinely stay civil actions in this posture. *See, e.g.*, *El v. Black*, No. 23 Civ. 10317 (JAV), 2025 WL 1707817, at *3-4 (S.D.N.Y. June 18, 2025); *Banyan v. Sikorski*, No. 17 Civ. 4942 (LJL), 2021 WL 3271735, at *3 (S.D.N.Y. July 30, 2021).

A stay is appropriate instead of outright dismissal because the statute of limitations for a false arrest claim begins to run at the time legal process is initiated, and plaintiffs must be afforded the opportunity to assert timely claims. *See Wallace*, 549 U.S. at 393-94; *see also Bussey v. Devane*, No. 13 Civ. 3660 (JS), 2013 WL 4459059, at *5 n.5 (E.D.N.Y. Aug. 16, 2013) (staying false arrest claim because of concern about statute of limitations). Here, there have been long delays and adjournments in the state court proceedings beyond Plaintiffs' control. SAC ¶¶ 59, 68, 75, 84.

Defendants cite *Singleton v. State of New York*, No. 98 Civ. 0414 (LAP), 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998), to argue for dismissal, but *Singleton* runs counter to the Supreme Court's "strong suggest[ion], if not holding[,] that a stay should be granted [for] a Section 1983 false arrest claim when a state court criminal prosecution is pending." *Banyan*, 2021 WL 3271735, at *3 (citing *Wallace*, 594 U.S. at 393-94). Defendants also cite *Heck v. Humphrey*, 512 U.S. 477 (1994), but "*Heck* bars a § 1983 claim based on an extant conviction, [and] it has no application to an anticipated future conviction." *Stegemann*, 648 F. App'x at 76.

Nor should damages claims be dismissed under *Younger* because of unresolved state court proceedings. Once again, a stay is the appropriate measure. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("[A]bstention and dismissal are inappropriate when damages

are sought . . .[, but] a stay of the action pending resolution of the state proceeding may be appropriate."); *Jones v. County of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017) (same). Dismissal is inappropriate under *Younger* because money damages are unavailable in the state court proceedings.  *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[E]ven if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."); *see also Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001) (holding *Younger* abstention is inappropriate "where the litigant seeks money damages for an alleged violation of § 1983").

As to the injunctive claims, Plaintiffs agree that *Younger* requires abstention for the false arrest claims of Plaintiffs with pending summonses.  For Plaintiffs Lee and Pender, their injunctive claims are not barred by *Younger* because their state court proceedings have resolved.[3]

## III.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED MUNICIPAL LIABILITY.

The Court should reject Defendants' request to dismiss Plaintiffs' claims against the City, Defs.' Br. 11-17, because Plaintiffs have plausibly alleged municipal liability based on an unofficial custom or practice that is so widespread as to have the force of law, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), and a failure to train and supervise NYPD officers adequately with respect to cyclists crossing intersections with the pedestrian signal, *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989).[4]

---

[3] Plaintiff Casey Esparza moved from New York after this case was filed and no longer seeks injunctive relief. SAC ¶ 18 n.5.

[4] Defendants do not challenge Plaintiffs' municipal liability allegations for the state and City law claims.  It is well established that, "[a]lthough a municipality cannot be held vicariously liable on a section 1983 claim, under New York state law, a municipality may be held vicariously liable on state law claims asserted against individual officers under a theory of *respondeat superior*."  *Martinez v. NYPD*, No. 19 Civ. 9885 (AJN), 2021 WL 4206944, at *2

A.    **Widespread Custom and Practice**

Plaintiffs allege that the City, through the NYPD, maintains a widespread custom and practice of detaining/arresting cyclists who lawfully cross intersections during red light traffic signals while the pedestrian light indicates white/walk.  "For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law."  *DiPippo v. County of Putnam*, No. 17 Civ. 7948 (NSR), 2019 WL 1004152, at *8 (S.D.N.Y. Feb. 28, 2019).  "'[T]he pre-discovery pleading standard for a [*Monell*] custom or practice is not a high bar,' and just a handful of instances of 'similar' unconstitutional misconduct, in addition to a plaintiff's own experience, can warrant proceeding to discovery."  *Gavin v. City of New York*, No. 20 Civ. 8163 (JPO), 2021 WL 3774113, at *4 (S.D.N.Y. Aug. 24, 2021) (quoting *DiPippo*, 2019 WL 1004152, at *4).  Courts must consider the plausibility of custom and practice allegations "in combination rather than piecemeal."  *Lynch v. City of New York*, 952 F.3d 67, 82 (2d Cir. 2020).

Here, Plaintiffs allege far more than a "handful of incidents" – they allege 22 separate instances of NYPD officers engaging in the challenged practice, including seven in which the named Plaintiffs were stopped and ticketed for crossing intersections during LPIs, SAC ¶¶ 47-104, and 15 similar instances involving other individuals, *id.* ¶¶ 120-32.  These incidents all occurred between 2021 and 2025, and 16 of them occurred in 2024 or 2025.

Courts have routinely upheld claims for the existence of an unlawful custom or practice based on far fewer than the 22 instances Plaintiffs allege here.  *See, e.g.*, *Tirado v. City of New York*, No. 19 Civ. 10377 (LAK)(SN), 2021 WL 11646299, at *10 (S.D.N.Y. Jan. 25, 2021) (five

---

(S.D.N.Y. Aug. 9, 2021).  Thus, even were the Court to agree with Defendants regarding Plaintiffs' *Monell* claims, the City would remain a defendant with respect to Plaintiffs' state and City law claims.

other instances of denial of medical care by DOC sufficient to allege municipal liability); *DiPippo*, 2019 WL 1004152, at *9 (six instances of same conduct with witnesses as part of same investigation sufficient); *Narvaez v. City of New York*, No. 16 Civ. 1980 (GBD), 2017 WL 1535386, at *8 (S.D.N.Y. Apr. 17, 2017) (three instances of DOC employees housing individuals with active tuberculosis in plaintiff's cell block sufficient); *McCants v. City of Newburgh*, No. 14 Civ. 556 (VB), 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (17 prior instances of alleged excessive force sufficient); *Reyes v. County of Suffolk*, 995 F. Supp. 2d 215, 231 (E.D.N.Y. 2014) ("more than three examples" of same conduct sufficient); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (three instances sufficient to defeat motion to dismiss).

Defendants cite cases in which courts held that alleging a small number of similar incidents over a long period of time was insufficient to state a *Monell* claim.  Defs.' Br. 13-14. But none of the cases Defendants cite involved anywhere close to 22 separate instances of the alleged custom or practice during the prior four years (or 16 in the prior two years).

In addition, where the alleged custom and practice is "very narrowly-defined and consist[s] of specific behaviors," a smaller number of similar instances may suffice at the pleading stage.  *Ki v. City of New York*, No. 20 Civ. 4343 (ARR)(JRC), 2022 WL 5423642, at *7 (E.D.N.Y. Sept. 1, 2022), *report and recommendation adopted*, 2022 WL 4551378 (E.D.N.Y. Sept. 29, 2022) (citation omitted).  Here, the custom and practice allegations are defined very narrowly as NYPD officers stopping and ticketing cyclists where the cyclist has crossed an intersection when the vehicle light is red and the pedestrian light is white.  *Contrast id.*, at *6-7 ("limited examples" insufficient where plaintiffs made "broad, nebulous allegations of excessive force and escalation of sensitive situations").  Accordingly, "limited examples" of the challenged practice suffice to allege a *Monell* claim, *id.*, and Plaintiffs have alleged much more than that.

Defendants suggest that some of the instances Plaintiffs cite of NYPD officers unlawfully ticketing cyclists for crossing intersections during pedestrian walk signals cannot be considered because they are "inadmissible hearsay." Defs.' Br. 14. But at the pleading stage, plaintiffs are not required to submit admissible evidence, or any evidence at all. *See Greenway II, LLC v. Wildenstein & Co.*, No. 19 Civ. 4093 (JCM)(RWL), 2019 WL 11278321, at *6 (S.D.N.Y. Oct. 8, 2019) ("[A] complainant is not required to plead evidence.") (quoting *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974)). The decision that Defendants cite for this proposition, *McAllister v. NYPD*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999), was at summary judgment and is therefore inapposite.

Likewise, the City contends that only past instances where there was an "adjudication of liability" may be considered in establishing a custom or practice. Defs.' Br. 12-14. But that is not the law on a motion to dismiss. The Second Circuit addressed in *Lynch* what prior-instance allegations can suffice to allege a custom or practice. 952 F.3d at 82. In that case, the plaintiffs alleged an NYPD custom or practice based on, *inter alia*, the existence of five pending lawsuits. The district court had "summarily rejected the Complaint's proffer of these 'numerous litigations as evidence of the official policy element' of municipal liability claims," on the basis that they are "*not probative* of the existence of an underlying policy." *Id.* at 81-82 (citations omitted; emphasis in original). The Second Circuit rejected that reasoning, explaining that the court improperly conflated the burden on summary judgment – where "proffers of proof" are required – with that at the pleading stage, where "[t]he plausibility standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Id.* at 82 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Circuit stressed that, "in

14

order to state a claim that is sufficiently plausible to avoid dismissal at the pleading stage, the fact asserted need not be presented in a form that would be admissible at trial." *Id.*

Accordingly, numerous district courts in the Second Circuit have considered other lawsuits or newspaper articles alleging similar conduct to plead *Monell* liability, even when proceedings have not resulted in liability adjudications. *See, e.g.*, *Tirado*, 2021 WL 11646299, at *10 (noting that "similar incidents from lawsuits and settlements" may be used to "bolster" *Monell* pleadings, and considering plaintiff's "references to news articles"); *Gonzalez v. New York City*, No. 16 Civ. 00254 (CM), 2016 WL 7188147, at *8 (S.D.N.Y. Dec. 2, 2016) (holding that plaintiff alleged a custom or practice based on single newspaper article describing one individual other than plaintiff); *Gavin*, 2021 WL 3774113, at *4 (considering existence of prior lawsuits alleging similar misconduct in denying dismissal of *Monell* claim); *Rodriguez v. City of New York*, No. 15 Civ. 07945, 2018 WL 1276826, at *7 (S.D.N.Y. Mar. 9, 2018) ("Although such reliance on these reports and news articles have little utility on summary judgment, at the motion to dismiss stage, such information suggests that the incidents described in the complaint did not just happen to Plaintiff but also to others."); *Osterhoudt v. City of New York*, No. 10 Civ. 3173 (RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (same as *Rodriguez*).

Moreover, Plaintiffs' custom and practice claim does not consist merely of unsubstantiated allegations. A cyclist in a prior incident alleged in the SAC brought an Article 78 proceeding in New York State Supreme Court and prevailed on his challenge to a ticket issued when he crossed during an LPI. SAC ¶¶ 122, 136-37. Similarly, Mr. Casey Esparza's summons was dismissed specifically because he complied with the LPI law. *Id.* ¶ 58.

In *Lynch*, the Second Circuit relied on the plaintiff's allegations that there had been "public judicial criticism" of the alleged practice in prior litigation, yet "the City knowingly did

15

not end that practice." 952 F.3d at 82. Here, a state Supreme Court Justice stated on the record on November 21, 2024, that a ticket was "improperly given" because it is lawful for cyclists to cross when the pedestrian signal indicates walk and the vehicle light is red, and a City attorney agreed. SAC ¶¶ 136-38. Nonetheless, the SAC describes numerous instances of named Plaintiffs and other individuals being subjected to the same practice after that date. The unlawful practice likewise continued after an Administrative Judge ruled in April 2025 that Mr. Casey Esparza had not violated the law because he crossed during an LPI. *Id.* ¶ 58.

Sworn testimony and recorded statements by NYPD officers further confirm that the unlawful practice actually occurred. In two proceedings, police officers gave sworn testimony that they understood the law to be that cyclists must comply with vehicle traffic signals. *See* SAC ¶ 57 (Defendant Vega testimony); ¶ 135 (NYPD Officer James Mariconi testimony). In a third incident, body-worn camera footage confirms that the police officers who ticketed a cyclist for crossing during LPIs were wrong about the law. *Id.* ¶¶ 125-28 (describing July 2024 incident involving cyclist Tim M.). In *Lynch*, the Second Circuit held that the plaintiff's allegations of prior sworn testimony from NYPD officers indicating that the alleged unlawful practice had occurred "made it plausible that the City had engaged in the alleged [unlawful] practice[.]" 952 F.3d at 82. The sworn testimony and recorded statements cited above confirm that officers incorrectly believed that cyclists are not permitted to cross with the pedestrian signal, which is why they unlawfully detained cyclists and issued summonses. These allegations "ma[ke] it plausible" that the City engaged in the custom and practice. *Id.* at 82.

When the Court views these allegations "in combination rather than piecemeal," as it must, *id.*, Plaintiffs have plausibly alleged municipal liability based on a widespread custom and practice.

16

B.      **Failure to Train or Supervise**

Plaintiffs also plausibly allege municipal liability based on a failure to train or supervise

NYPD officers that "amount[s] to deliberate indifference to the rights of those who come into

contact with the municipal employees." *Edwards v. City of New York*, No. 14 Civ. 10058 (KBF),

2015 WL 5052637, at *4 (S.D.N.Y. Aug. 27, 2015) (citation omitted).  Even after *Twombly* and

*Iqbal*, courts in the Second Circuit have applied a "less stringent pleading standard for failure to

train claims because '[i]t is unlikely that a plaintiff would have information about the city's

training programs or about the cause of the misconduct at the pleading stage.'"  *Williams v. City

of New York*, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010) (quoting *Amnesty Am. v. Town of W.

Hartford*, 361 F.3d 113, 129 n.10 (2d Cir. 2004)); *Edwards*, 2015 WL 5052637, at *4 ("[A]

plaintiff need only plead that the city's failure to train caused the constitutional violation.")

(citation omitted).

Here, Plaintiffs have plausibly alleged that the City's failure to train NYPD officers

regarding the LPI law amounts to deliberate indifference.  The SAC alleges 22 separate instances

of NYPD officers stopping and ticketing cyclists for crossing intersections during LPIs, SAC

¶¶ 47-104, 120-32, five news articles from 2021 to 2025 describing the unlawful practice, *id.* at

¶¶ 106 n.6, 110 n.7, 120 n.8, 122 n.10, 123 n.11, and an Article 78 proceeding initiated in 2023

challenging an application of the practice, *id.* ¶¶ 136-38.

With respect to Defendants' contention that unadjudicated allegations may not support a

*Monell* claim, the case law is clear that such allegations may be considered to establish a failure

to train.  *See, e.g.*, *Packard v. City of New York*, No. 15 Civ. 7130 (AT), 2017 WL 11580855, at

*2-3 (S.D.N.Y. July 17, 2017) (distinguishing cases that suggested otherwise on the basis that

they did not concern motions to dismiss or failure to train claims); *Case v. City of New York*, 233

F. Supp. 3d 372, 406 (S.D.N.Y. 2017) (other lawsuits challenging mass-arrest related policies and practices "permit[ted] a plausible inference of deliberate indifference") (citation omitted); *Nigro v. City of New York*, No. 19 Civ. 2369 (JMF), 2020 WL 5503539, at *6 (S.D.N.Y. Sept. 11, 2020) (refusing to dismiss failure-to-train claim against City based in part on "citations to unrelated police encounters, letters, and post-hoc reports"); *An v. City of New York*, No. 16 Civ. 5381 (LGS), 2017 WL 2376576, at *4 (S.D.N.Y. June 1, 2017) (holding that plaintiff alleged *Monell* failure to train claim based on prior lawsuits, news reports, and complaints, and rejecting "[t]he City's argument that a plaintiff cannot rely on these sources because they contain hearsay" in the Rule 12 context); *Sims v. City of New York*, No. 15 Civ. 2485 (AT)(RLE), 2017 WL 11827091, at *4 (S.D.N.Y. Aug. 28, 2017) (citing "string of pending lawsuits and settlement agreements that may plausibly raise an inference of deliberate indifference").

In addition to the numerous instances of the unlawful practice that Plaintiffs identify, the failure to train is also plausibly established by the fact that multiple NYPD officers plainly misunderstood the law during and after the challenged stops. Two NYPD officers gave sworn testimony confirming that they understood the law to be that cyclists must comply with vehicle traffic signals. SAC ¶¶ 57, 135. Body-worn camera footage confirms that two other officers similarly believed that cyclists are not permitted to cross with the LPI. *Id.* ¶¶ 125-28. And officers' statements during the stops of several named Plaintiffs confirm that the officers misunderstood the law to require cyclists to comply with vehicle signals, even when the pedestrian light indicates walk. *Id.* ¶ 65 (Defendant Pessoa); ¶ 72 (Defendant Keller); ¶¶ 80-81 (Defendant Martino); *see also id.* ¶ 90 (Defendant John Doe 1 indicating he was not aware of the law but would look it up later, while nonetheless issuing summons).

The City contends that Plaintiffs have failed to allege a "specific deficiency in its training programs." Defs.' Br. 15-16. But Plaintiffs specifically allege that the City's training programs fail to inform officers that cyclists are permitted to cross intersections when the vehicle light is red but the pedestrian light is white. SAC ¶ 148. Plaintiffs allege on information and belief that, "after Local Law 154 was passed in 2019, the City did not provide any specific training to NYPD personnel regarding that law, nor did it otherwise inform them of the substance of that new law," and that "NYPD officers' general understanding based on trainings and other information they receive from the City, is that cyclists are required to obey all traffic laws." *Id.* ¶¶ 146-47. It is reasonable to infer the truth of these allegations based on the numerous instances of NYPD officers violating cyclists' rights because they misunderstood the law as well as the cited instances of NYPD officers confirming that misunderstanding. *See Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 616 (S.D.N.Y. 2023) (denying summary judgment on *Monell* failure to train and supervise claims where "Plaintiffs presented evidence that members of the MVPD had a misunderstanding of their authority to conduct strip searches").

Contrary to Defendants' suggestion, Defs.' Br. 17, Plaintiffs allege that the City was on notice of the deficiency in its training regarding the LPI law, yet failed to take meaningful steps to remedy the problem. In addition to the 22 separate instances of the unlawful practice Plaintiffs identify, they also cite five news articles describing the unlawful practice and an Article 78 proceeding that successfully challenged an unlawful summons. Plaintiffs also specifically allege that Defendant Tisch has known or should have known that NYPD officers are not being trained properly on the law and/or do not know the law regarding cyclists crossing intersections during pedestrian signals. SAC ¶ 149.

19

Defendants also contend that Plaintiffs have not alleged that its failure to train was a moving force behind their arrests, Defs.' Br. 17, but that is false. Plaintiffs expressly plead that the unlawful conduct in this case flows directly from the NYPD's failure to train regarding the 2019 law. SAC ¶¶ 44-46, 145-50, 183-85. Had officers been properly trained that cyclists are permitted to cross during white pedestrian signals, the constitutional violations in this case would not have occurred. It is officers' ignorance of the law, and misunderstanding about the traffic rules for cyclists, that caused the constitutional violations.

Plaintiffs also plausibly state a claim for municipal liability for failure to adequately supervise NYPD officers. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). As discussed, Plaintiffs have demonstrated this failure through the notice that was provided to the NYPD through lawsuits and news articles and the consistent, continuing civil rights violations.

In conclusion, Plaintiffs have plausibly asserted their *Monell* claim under two independent theories: widespread custom and practice and failure to train or supervise.

## IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED DEFENDANT TISCH'S LIABILITY.

Defendants contend that Plaintiffs' claims against Defendant Tisch, the NYPD Commissioner, should be dismissed because Plaintiffs have not alleged her personal involvement. Defs.' Br. 10-11. Defendants are wrong.

Plaintiffs allege that Defendant Tisch is the person chiefly and ultimately responsible for formulating, implementing, and supervising NYPD policies and practices; that she has known or

should have known that NYPD officers are not being trained properly on the law and/or do not

know the law regarding cyclists crossing intersections during pedestrian signals; and that she has

nonetheless made no efforts to train NYPD officers or otherwise ensure that the law is followed

to avoid unlawful seizures and the issuance of unlawful summonses.  SAC ¶¶ 27, 149, 184-85.

Plaintiffs likewise allege that Defendant Tisch has publicly and repeatedly since April

2025 urged NYPD officers to crack down on cyclists and issue more summonses for minor

traffic violations.  *Id.* ¶¶ 140-42, 150.  NYPD officers have followed Defendant Tisch's calls for

them to ramp up enforcement, and the number of tickets given to cyclists has increased

dramatically in 2025.  *Id.* ¶ 143.  Defendant Tisch's close personal involvement in spearheading

the crackdown on cyclists, her knowledge of the need for additional training and supervision, and

her ongoing failure to take any responsive steps plausibly allege her personal liability for the

unlawful stops and summonses in this case.  *See L.B. v. Town of Chester*, 232 F. Supp. 2d 227,

237 (S.D.N.Y. 2002) (denying motion to dismiss claims against Commissioner of New York

City Department of Homeless Services because "personal involvement has been construed to

include creating a policy or custom under which the unconstitutional practices occurred or

allowed such a policy or custom continue").

## V.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR INJUNCTIVE CLAIMS.

Plaintiffs Pender and Lee have standing to obtain injunctive relief for their false arrest

claims because they have demonstrated "both [1] a likelihood of future harm and [2] the

existence of an official policy or its equivalent."  *An v. City of New York*, No. 16 Civ. 5381

(LGS), 2017 WL 2376576, at *2 (S.D.N.Y. June 1, 2017) (quoting *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004)).[5]  Defendants' arguments to the contrary are meritless.

### A.    Legal Standard

To establish standing, a component of subject matter jurisdiction, "a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  "[A]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  For suits seeking injunctive relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E.*, 156 F.3d at 344.  Only one plaintiff need have standing for a class action complaint to proceed.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).

### B.    Likelihood of Future Harm

Plaintiffs plausibly have alleged a likelihood of future harm, which is sufficiently likely if "[t]he injury or threat of injury" is "both real and immediate, not conjectural or hypothetical." *An*, 2017 WL 2376576, at *2 (citing *Shain*, 356 F.3d at 215) (internal quotation marks omitted). Plaintiffs have alleged far more than just past exposure to illegal conduct.  Plaintiffs face future illegal stops during LPIs because they cycle with greater frequency than other City residents and plan to continue cycling regularly in areas with intensive NYPD enforcement.  They have thus

---

[5] As addressed *supra*, the Plaintiffs whose state court proceedings remain ongoing cannot obtain injunctive relief under *Younger*, and Plaintiff Casey Esparza has moved and therefore does not seek injunctive relief.

"expressed [their] intent . . . to engage in the very conduct that prompted defendants' prior enforcement action."  *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 385-86 (2d Cir. 2015).

Plaintiffs are frequent cyclists who bike to work and personal engagements, and for exercise.  SAC ¶¶ 105-14.  As alleged in the SAC with specificity for each Plaintiff – including by identifying specific intersections and ticketing rates for corridors that Plaintiffs regularly travel – Plaintiffs each frequently and habitually pass through intersections with high enforcement rates.  *Id.*  To avoid injury or death on the road, they continue to cycle lawfully across intersections with the LPI.  *Id.* ¶ 105.  Those habits expose them to a serious risk of being subjected to future unlawful detentions and summonses.

The allegations concerning Plaintiffs' bicycling habits, together with higher enforcement rates in the areas where they travel, confirm that Plaintiffs are likely to be unlawfully stopped and ticketed again.  That conclusion is corroborated by the 22 separate incidents of unlawful stops alleged in the SAC, together with sworn testimony and recorded statements of NYPD officers that they understood the law to require cyclists to follow vehicle laws, and multiple news articles detailing the challenged practice.  *See* Section III, *supra*.  In *City of Los Angeles v. Lyons*, by contrast, the plaintiff only alleged "that 10 chokehold-related deaths had occurred" as a result of the defendant's official policies.  461 U.S. 95, 100 (1983); *see Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y.), *on reconsideration in part*, 191 F.R.D. 52 (S.D.N.Y. 1999) (distinguishing *Lyons* on same basis).

In *An*, where the plaintiff was unlawfully arrested for filming NYPD officers, the plaintiff did "not solely rely on the allegations regarding his prior arrest to show a sufficient likelihood that he will be wronged in a similar way," but rather, he alleged that he "continue[d] to film public police activity about twice per month and that this conduct will bring him into contact

with police officers." 2017 WL 2376576, at *5. That likelihood, along with his allegations of an official policy based on the failure to train or supervise, conferred standing. *Id.*

Here, Plaintiffs engage in the targeted conduct far more frequently than twice per month. Because Plaintiffs frequently cycle in disproportionately high enforcement areas, that "bring[s them] into contact with police officers." *Id.* For instance, Plaintiff Pender bikes roundtrip to work approximately six times per week, including through one block where NYPD officers issued more than 450 summonses to cyclists for failure to obey red lights in the first half of 2025 alone. SAC ¶ 108. Plaintiff Lee also regularly bikes through high-ticket corridors in Brooklyn and Queens. *Id.* ¶ 113.

Although NYPD officers are violating the law, they believe that they are applying it correctly. *Id.* ¶¶ 57, 125-28, 135. For that reason, Defendants have not "disavowed that they would criminally charge [the plaintiffs] again in the same circumstances." *Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022) (quotation marks omitted). Clear statements by officers that they intend to continue to enforce their misunderstanding of the law support finding that Plaintiffs satisfy this standing requirement. *See Roe v. City of New York*, 151 F. Supp. 2d 495, 505 (S.D.N.Y. 2001).

In *Lyons* and other authorities on which Defendants rely, the plaintiffs' risk of future injury depended on being arrested again for unlawful conduct. Defs.' Br. 20. Those cases are distinguishable here because Plaintiffs are engaging in lawful behavior. In *Lyons*, the plaintiff had committed a traffic violation. 461 U.S. at 97. The Court identified too many contingencies to find standing because the plaintiff would have to be "arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.* at 108. In *MacIssac v. Town of Poughkeepsie*, the plaintiff admitted

24

he was arrested with "arguable probable cause" for DWI.  770 F. Supp. 2d 587, 591-92

(S.D.N.Y. 2011); *see also Williams v. City of New York,* 34 F. Supp. 3d 292, 297 (S.D.N.Y.

2014) (no standing for plaintiff challenging the lack of sign language interpreters for arrested or

incarcerated individuals).  By contrast, in *Hodgers-Durgin v. de la Vina*, the court distinguished

*Lyons* because the plaintiffs engaged in "innocent conduct," and "there [was] no tenable

argument that plaintiffs should avoid driving near the Mexican border in order to avoid another

stop by the Border Police."  199 F.3d 1037, 1041 (9th Cir. 1999).  "[U]nlike in *Lyons*," there was

"no string of contingencies necessary to produce an injury."  *Id.* at 1041-42.

Plaintiffs' likelihood of future harm is not speculative because they are engaged in lawful

conduct in areas with elevated ticketing rates.  Their "risk of future injury does not depend on

[them] being arrested for unlawful conduct and so [they] cannot avoid that injury by following

the law."  *An*, 2017 WL 2376576, at *5 (citing *Floyd v. City of New York*, 283 F.R.D. 153, 169-

70 (S.D.N.Y. 2012)); *Roe*, 151 F. Supp. 2d at 503 ("Other courts have appropriately

distinguished *Lyons* in cases where the plaintiffs have been subjected to police action for

engaging in legal activity.").  No string of inferences is required to find that as Plaintiffs continue

to cross intersections with LPIs, they will be exposed to a high likelihood of wrongful

enforcement given the NYPD's pattern and practice of issuing unlawful tickets.  *See Md. State

Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999)

(likelihood of injury from future unlawful traffic stops because plaintiffs "may be stopped even if

no traffic violation has been committed," they "expect they will continue to travel on I-95," and

the court found a "pattern and practice").

Defendants contend that Plaintiffs lack standing because they each were arrested once,

Defs.' Br. 20, but the law does not require that a plaintiff endure multiple unlawful encounters.

"[T]here is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury." *Roe*, 151 F. Supp. 2d at 503; *An*, 2017 WL 2376576, at *6 (holding that plaintiff had standing following one unlawful arrest); *Floyd*, 283 F.R.D. at 170 ("Even Clarkson's single stop, in light of the tens of thousands of facially unlawful stops, would likely confer standing."). In *Roe*, the plaintiffs, individuals who used intravenous drugs, had standing to challenge the NYPD's "practice of unlawfully harassing, arresting and prosecuting" individuals "who are registered participants in state-authorized New York City needle exchange programs." 151 F. Supp. 2d at 500. Although the plaintiffs had not been arrested more than once, the court relied on allegations that the NYPD had an ongoing "pattern and practice of detaining and arresting registered NEP participants in the vicinity of NEP centers" and that was "likely to lead to arrests of NEP members in the future." *Id.* at 503. As detailed below, the NYPD's pattern or practice, along with Plaintiffs' frequent cycling through enforcement zones, is likely to lead to future illegal summonses.

### B. Official Policy or its Equivalent

Plaintiffs have alleged that Defendants have an "official policy or its equivalent" of unlawfully ticketing cyclists who cross at LPIs, thus satisfying the second prong of *Shain*. As explained in Section III, *supra*, Plaintiffs have alleged municipal liability based on an unofficial custom or practice as well as the failure to train or supervise. That is sufficient for standing.

The majority of courts in this Circuit apply the *Monell* standard when determining whether a plaintiff has alleged an official policy or its equivalent for standing purposes. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 67-68 (S.D.N.Y. 2018) ("District courts in this Circuit have generally construed the existence of an official policy or its equivalent as coextensive with the 'policy' or 'custom' requirement of municipal liability under 42 U.S.C. § 1983."); *An*, 2017

26

WL 2376576, at *3; *Battle v. City of New York*, No. 11 Civ. 3599 (RMB), 2012 WL 112242, at

*4 (S.D.N.Y. Jan. 12, 2012); *Roe*, 151 F. Supp. 2d at 505.  That approach accords with the plain

language of *Shain*, where the panel wrote, "a plaintiff seeking injunctive relief must demonstrate

both a likelihood of future harm and the existence of an official policy *or its equivalent*."  356

F.3d at 216 (emphasis added).  *Shain* did not require that plaintiffs establish an official policy to

meet the standing requirement.  *See Aguilar v. ICE*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011)

("A policy can be inferred from the informal acts or omissions of supervisors."); *Battle*, 2012

WL 112242, at *4 ("The pleadings suggest a widespread custom or failure to train.").  Although

the Second Circuit has not explicitly weighed in, the Ninth Circuit does not require an official

policy to establish standing.  *See, e.g.*, *Vasquez Perdomo v. Noem*, 148 F.4th 656, 675-76 (9th

Cir. 2025) ("pattern or practice" sufficient to establish injunctive standing).  This Court should

follow these precedents.

Defendants cite *MacIssac*, which held that "formal policy or its equivalent" should be

defined more narrowly than a "policy" under *Monell*.  770 F. Supp. 2d at 597.  But that

interpretation ignores the plain language of *Shain* ("official policy *or its equivalent*").  It also

elides *Lyons*, which noted that the record contained no evidence of "any written or oral

pronouncement by the LAPD o*r any evidence showing a pattern of police behavior that would

indicate that the official policy* would permit the application of the control holds."  461 U.S. at

110 n.9 (emphasis added).  In *Lyons*, evidence of a pattern would have sufficed to show a policy

for standing purposes.

The authorities cited in *MacIssac*, 770 F. Supp. 2d at 597, do not support its ultimate

holding.  In *Curtis v. City of New Haven*, the Second Circuit noted that the police department's

general orders did "not authorize the use of mace in the manner it was used in this case."  726

F.2d 65, 68 (2d Cir. 1984). But *Curtis* did not suggest that an official policy was required for injunctive standing. Rather, the plaintiffs in *Curtis* lacked injunctive standing both because they had not shown *any* type of widespread practice (whether formal or informal) and had failed to establish that they were likely to be maced again. *Id.* Here, Plaintiffs have shown that NYPD officers have stopped numerous additional cyclists under the same circumstances, and that the widespread custom and failure to train make future unlawful stops likely. *See* SAC ¶¶ 119-36.

Even if this Court were to follow *MacIssac*, the widespread custom and practice alleged here are not "too unofficial" to establish standing. *See* Section III, *supra*. *MacIssac* rejected a failure to train basis for standing, but not a custom and practice theory. Here, Plaintiffs satisfy the *Shain* policy requirement both through the City's failure to train or supervise, and through the NYPD's widespread custom and practice of unlawfully ticketing cyclists.

Thus, Plaintiffs Pender and Lee have alleged standing to obtain injunctive relief against Defendants, thereby conferring subject-matter jurisdiction over the injunctive class allegations. *See Denney*, 443 F.3d at 263.

## VI.    THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NON-FEDERAL CLAIMS.

The Court should exercise supplemental jurisdiction over Plaintiffs' state and City law claims, all of which arise from the same nucleus of common fact as Plaintiffs' federal claims. *See, e.g.*, *Lynch v. City of New York*, 335 F. Supp. 3d 645, 657 (S.D.N.Y. 2018) (exercising supplemental jurisdiction after declining to dismiss federal 1983 claims); *Anderson v. County of Nassau*, 297 F. Supp. 2d 540, 548 (E.D.N.Y. 2004) (same); *Javid v. Scott*, 913 F. Supp. 223, 229 (S.D.N.Y. 1996) (same).

The City seeks dismissal of Plaintiffs' non-federal claims on the basis that Plaintiffs have not plausibly alleged federal claims, but as explained above, Defendants are wrong. *See* Section

II, *supra*. Defendants are also mistaken that local law issues predominate over federal issues. Plaintiffs' principal claim is a Fourth Amendment challenge to the NYPD's unconstitutional custom and practice of arresting cyclists who lawfully cross intersections when the pedestrian signal shows white/walk. There is no basis to deny jurisdiction because of purportedly predominant state law issues.

## VII.   STRIKING THE CLASS ALLEGATIONS WOULD BE IMPROPER.

The Court should deny the City's motion to strike Plaintiffs' class allegations pursuant to Federal Rule of Civil Procedure 12(f) because it is both premature and baseless. "Motions to strike under Rule 12(f) are rarely successful." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015). "This is particularly true in the class-action context because a Rule 12(f) motion requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (citation omitted). "Generally speaking, then, motions of this kind are deemed procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).

Whereas a "party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met, it need not do so immediately upon filing a complaint or when responding to a motion to dismiss." *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 660 (S.D.N.Y. 2025) (citation omitted). Accordingly, motions to strike class allegations are granted only in "exceptional circumstances," and where defendants can meet the "higher burden of proving 'from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may

be able to obtain during discovery.'"  *Id.* at 660-61 (quoting *Reynolds*, 136 F. Supp. 3d at 511).

Defendants cannot meet that burden here, so the motion to strike should be denied.

First, several of Defendants' arguments in support of their motion to strike are duplicative

of their motion to dismiss – *e.g.*, that Plaintiffs lack injunctive standing, that all their claims

should be dismissed, and that they have not alleged municipal liability.  Defs.' Br. 24.  Plaintiffs

have responded to each of those arguments above, and the Court need not address them

separately with respect to the motion to strike.

Second, Defendants' contention that Plaintiffs cannot meet the Rule 23 requirements is

premature.  *See Ostenfeld v. Laundress, LLC*, No. 22 Civ. 10667 (JMF), 2024 WL 967124, at *4

(S.D.N.Y. Mar. 5, 2024) ("motion[s] to strike class claims [are] considered premature if the

issues raised are the same ones that would be decided in connection with determining the

appropriateness of class certification under Rule 23(b)") (quotation marks and ellipses omitted).

With respect to numerosity, courts only strike class allegations in two narrow

circumstances:  "when the plaintiff has not even attempted to point to other class members, or

when it is undisputed the plaintiff cannot show numerosity regardless of class discovery."

*Thomas v. Colgate-Palmolive Co.*, No. 23 Civ. 1426 (VB), 2024 WL 5200022, at *5 (S.D.N.Y.

Dec. 23, 2024).  Here, Plaintiffs have alleged that hundreds of cyclists have been subjected to the

challenged practice, and that hundreds more will be subjected to that practice in the future.  SAC

¶¶ 118, 133.  Contrary to Defendants' assertion, that is neither speculative nor conclusory given

that Plaintiffs describe 22 separate individuals who have been subjected to the unlawful practice

prior to any discovery.  *Id.* ¶¶ 119-32.  Plaintiffs also plead facts concerning the number of daily

bicycle commuters, *id.* ¶ 34; the thousands of intersections with LPIs or Exclusive Pedestrian

Intervals, *id.* ¶ 158; the City's efforts to encourage cyclists to "go with the walk," *id.* ¶¶ 40-42;

the 13,000 cyclists ticketed for traffic signal violations between 2018 and 2024, *id.* ¶ 156; the dramatic increase in the number of tickets issued to cyclists in 2025, *id.* ¶¶ 139-43; and NYPD officers' misunderstanding of the law, *id.* ¶¶ 57, 125-28, 135, 147. These allegations demonstrate that it would not be "impossible" for Plaintiffs to meet the numerosity requirement.

Defendants speculate that the commonality, typicality, and predominance requirements cannot be met because the claims would require individualized determinations and do not lend themselves to class treatment. Defs.' Br. 24-25. But commonality "does not require all questions of law or fact to be common. Indeed, even a single common question will suffice." *Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279, 286 (S.D.N.Y. 2012); *see also Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 522 (S.D.N.Y. 2018) ("The Commonality Requirement has been characterized as a 'low hurdle.") (citation omitted). And typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Stinson v. City of New York*, 282 F.R.D. 360, 370-71 (S.D.N.Y. 2012) (citation omitted). Where, as here, "the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met." *Id.* Likewise, all that is required for predominance in the Rule 23(b)(3) damages class context "is a possibility that common questions will predominate over individualized questions." *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265 (JPO), 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018). "Issues relating to predominance, in particular, are ripe for further factual development and are thus precisely the sort of determination that the Court would make at the class certification stage." *Goetz*, 768 F. Supp. 3d at 661 (citation modified).

31

Plaintiffs allege numerous questions of law and fact that are common to the putative

class, including: (i) whether NYPD officers failed to understand N.Y.C. Admin. Code 19-

195.1(b), including by wrongfully arresting, detaining, and ticketing and/or summonsing class

members for violations of the law when there were none; (ii) the existence of a pattern and

practice of officers stopping, arresting, and ticketing and/or issuing criminal summonses to

members of the class; (iii) the failure of the City to train or supervise police officers adequately;

and (iv) the appropriate injunctive remedies that will be needed to end this unlawful pattern and

practice. SAC ¶ 161. Plaintiffs also allege that the City's policy and practice of unlawfully

stopping and ticketing cyclists for crossing with the pedestrian signal caused the injuries suffered

by Plaintiffs and all putative class members; that the City is expected to raise common defenses

to the claims of all class members including denying that its policy and practice violated the

Constitution or state or City law; and that common issues of law and fact predominate over

individual issues. *Id.* ¶¶ 162-65.

Given the numerous common questions Plaintiffs allege that may be resolved by class-

wide proof after class discovery, Defendants' naked speculation that individualized

determinations would be required fails to "clear the high bar of showing . . . that it would be

impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain

during discovery." *Thomas*, 2024 WL 5200022, at *3 (citation omitted). Tellingly, the only

authority Defendants cite in support of this argument, *Haus v. City of New York*, No. 03 Civ.

04915, ECF No. 180 (S.D.N.Y. Aug. 31, 2011), is a report and recommendation issued *after*

*discovery* on a class certification motion. *Cf. Calvo v. City of New York*, No. 14 Civ. 7246

(VEC), 2018 WL 1633565, at *5 n.19 (S.D.N.Y. Apr. 2, 2018) (rejecting defendant's reliance on

32

*Haus*, because *Haus* based its typicality determination on a finding "that there was no uniform policy or practice to hold the plaintiffs' claims together").

Defendants may of course make any arguments regarding the Rule 23(b) requirements at the class certification stage. At this juncture, however, Plaintiffs have plausibly alleged claims on behalf of the putative class, and Defendants' motion should be rejected.

## CONCLUSION

For all of these reasons, the Court should deny Defendants' Motion to Dismiss.

Dated:  January 9, 2026
    New York, New York

                Respectfully submitted,

                WANG HECKER LLP

                By:    /s/Alexander Goldenberg
                    Alexander Goldenberg
                    Daniel Mullkoff
                    Mariann Meier Wang
                    Eric Hecker
                    Lily Sawyer-Kaplan
                    Jahne Brown*
                    111 Broadway, Suite 1406
                    New York, New York 10006
                    (212) 620-2600

                    *Attorneys for Plaintiffs and the Putative Class*

                    *SDNY admission pending

## CERTIFICATE OF COMPLIANCE

I, Alexander Goldenberg, in accord with the Court's Order dated January 5, 2026, ECF No. 64, granting Plaintiffs leave to file an oversized brief, certify that this Memorandum of Law in Opposition to Defendants' Motion to Dismiss contains 10,202 words (including footnotes and excluding the parts of the document exempted by Local Rule 7.1(c)) and complies with the Court's formatting rules. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated: January 9, 2026
     New York, New York


_____/s/Alexander Goldenberg_____
Alexander Goldenberg

*Attorney for Plaintiffs and the Putative Class*